GOMOLKA, EXRX., APPELLEE, *v.* STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY, APPELLANT.

[Cite as Gomolka *v.* State Auto. Mut. Ins. Co. (1984), 15 Ohio St. 3d 27.]

(No. 83-1951—Decided December 26, 1984.)

*Mansour, Gavin, Gerlack & Manos Co., L.P.A., Mr. Ernest P. Mansour, Mr. Michael T. Gavin, Mr. Eli Manos, Messrs. Eardley & Wantz* and *Mr. David J. Eardly,* for appellee.

*Messrs. Cronquist, Smith, Marshall & Kagels* and *Mr. Jack F. Smith,* for appellant.

*Per Curiam.* The first issue presented for review in this appeal is whether the appellee properly can stack the uninsured/underinsured motorist coverages contained in her family's auto insurance policy. This issue is readily resolved by reference to our recent holding in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, in which we stated at paragraph one of the syllabus:

"Where an insured has paid separate premiums in a single policy providing several vehicles with uninsured motorist coverage, the insured is entitled to recover under the uninsured motorist provisions of the policy an amount up to the aggregate sum of the uninsured motorist coverages."

The appellee herein and her husband made regular payments to State Auto for insurance coverage on their family's three vehicles. Included within these payments were three separate premiums for uninsured/underinsured motorist coverage. As stated in *Lewis, supra,* at 158, "* * * [t]he purpose of uninsured motorist coverage * * * is to afford the insured additional protection in the event of an accident with an uninsured motorist, not to provide coverage to a vehicle. * * *" Thus, the appellee and her husband effectively purchased three separate coverages of $300,000 and were thereby entitled to a total of $900,000 coverage for damages resulting from any one accident — even when such accident involved only one of the three insured family vehicles.[1]

---

[1] The insurance policy issued by State Auto to the appellee herein and her husband contained no provision that reasonably can be construed to prohibit the stacking of unin-

The second issue presented is whether the $100,000 paid to the appellee by another insurer may be deducted by State Auto directly from the limits of the appellee's uninsured motorist coverage, *or* whether the terms of the appellee's coverage permit State Auto to set off the $100,000 only against the appellee's total damages. In other words, may State Auto reduce its total uninsured motorist coverage for the appellee's family to $800,000 ($900,000 in total stacked coverage minus $100,000 already paid to appellee by another insurer), or may State Auto only deduct the $100,000 payment to the appellee from appellee's total damages (*e.g.,* if appellee has one million dollars in damages, then $100,000 is set off against those damages and State Auto is still obligated to appellee for a full $900,000 of uninsured motorist coverage).

This issue is resolved by reviewing the express language of the policy that was issued by State Auto to the appellee and her husband. The relevant portion of the policy, contained in Part I, Limits of Liability, Paragraph C, states:

"Any amount payable under the Uninsured Motorists Coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by

"(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured highway vehicle * * *."

The appellant argues, in effect, that the words, "any amount payable" should be interpreted to mean "the total amount of coverage provided, if payable." The appellee, on the other hand, would interpret "any amount payable" to mean "any damages compensable." We find this latter interpretation clearly to be the most reasonable.

Appellant's "interpretation" is, in reality, an "insertion." State Auto would have the court read additional terms into its policy. The appellee's interpretation, however, equates "amount payable" to "damages compensable" by looking to the plain meaning of the policy's terms and by focusing on the nature and purpose of uninsured/underinsured motorist coverage. When purchasing this coverage, an insured expects to be protected against a loss caused by another that is not covered by that other person's insurer. Thus, an "amount payable" under uninsured/underinsured motorist coverage is an *amount of damages suffered* by the insured, which amount is greater than the insurance coverage held by the party causing the damages.

Even if there were some doubt as to the propriety of appellee's interpretation of her policy, however, this doubt still would be resolved in her favor. As we noted in *Gomolka I, supra,* at 174, "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be con-

---

sured/underinsured motorist coverages. R.C. 3937.18(G) (originally R.C. 3937.181[E]), which became effective after the events that gave rise to the instant case, specifically permits the inclusion of anti-stacking provisions in insurance policies providing uninsured motorist coverages.

strued liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]. This rule of construction, in combination with the plain meaning of the policy terms in question, makes it clear that State Auto may only utilize the $100,000 payment to the appellee as a setoff against the total damages suffered by her family.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., dissents in part.

HOLMES, J., dissents.

LOCHER, J., dissenting in part. Although I concur in the majority resolution of the second issue of this case dealing with setoff, I must dissent from that part of the opinion dealing with stacking of coverages. The reasons for my dissent were succinctly set forth in the dissent in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 161 (Holmes, J., dissenting in part), in which I concurred. As was the case in *Auto-Owners, supra,* the insured should be bound by the terms of their insurance contract, which here provides for a $300,000 uninsured/underinsured coverage ceiling per accident.

Accordingly, I would reverse the judgment of the court of appeals on the first issue.

HOLMES, J., dissenting. I hereby dissent from the majority concerning the first issue herein based upon the principles set forth in my dissenting opinion in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 161-163.

I also dissent from the majority opinion concerning the second issue in that the "Limits of Liability," as contained in the insurance policy, are quite clear and unequivocal, and are not subject to judicial interpretation by this court. The limitation specifically states that "[a]ny amount payable under the Uninsured Motorists Coverage * * * shall, be reduced by (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured highway vehicle * * *." This language is very clear and demonstrates the intent of the parties that the "amount payable" under the facts presented would be $300,000, the maximum sum payable for "each accident," less a setoff of $100,000, the amount paid by Buckeye Union Insurance on behalf of its insured, Duk Kim.