Ronald H. WOOD, Plaintiff-Respondent,

v.

## AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant.†

Supreme Court

*No. 87-2051. Submitted on briefs October 5, 1988.—Decided March 9, 1989.*

(Also reported in 436 N.W.2d 594.)

† Motion for reconsideration denied April 11, 1989, with costs.

641

For the defendant-appellant there were briefs (in court of appeals) by *Carroll Metzner, Jean M. Wiencek,* and *Bell, Metzner & Gierhart, S.C.,* Madison.

For the plaintiff-respondent there was a brief (in court of appeals) by *Daniel G. Sandell,* Madison.

Amicus curiae briefs were filed by *Eric Englund,* Madison, for Wisconsin Insurance Alliance; and *D.J. Weis* and *Johnson, Weis, Paulson & Priebe, S.C.,* Rhinelander, for Wisconsin Academy of Trial Lawyers.

LOUIS J. CECI, J. This is an appeal from a judgment of the circuit court for Dane county, Moria Krueger, circuit judge, granting Ronald H. Wood's motion for summary judgment in the amount of $133,753.42, plus costs. This court granted a petition to bypass the court of appeals, pursuant to sec. (Rule) 809.60, Stats. There are two issues raised in this appeal. The first issue is whether a drive-other-car exclusion in an underinsured motorist (UIM) provision of an insurance policy is valid and enforceable under Wisconsin law so as to prevent stacking of UIM benefits. The second issue is whether the reducing clause in the UIM

provision of each insurance policy at issue in this case is valid and enforceable under Wisconsin law so as to reduce UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. We conclude that the drive-other-car exclusion involved in this case is invalid and unenforceable under sec. 631.43(1), Stats. In addition, we conclude that the reducing clause in the UIM provision of each insurance policy at issue does not reduce UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. Rather, the "amounts payable" from each UIM provision at issue in this case are measured against the insured's total damages, and the reducing clauses reduce UIM benefits by subtracting from the total damages sustained by the insured the amount received by the insured from the underinsured driver's liability policy.

The facts in this case are undisputed. On October 31, 1986, Donna Wood, the wife of Ronald H. Wood (respondent), was killed when a car, negligently driven by Daniel Nicholson, collided head-on with the 1984 Dodge Aries she was driving. The accident occurred in her lane of traffic. The car driven by Nicholson was owned by Virginia Trapino and was insured by the appellant, American Family Mutual Insurance Company (appellant). The policy provided for $25,000 per person liability coverage for injury or death caused by negligent operation of the car. The respondent's two automobiles, the 1984 Dodge Aries and a 1978 Dodge B200, were also insured by the appellant. Each policy contained UIM coverage of $100,000 per person and medical expense coverage of $2,000 per person. Each policy also had two clauses which are at issue in this

appeal. First, each UIM provision contained a drive-other-car exclusion stating:

> This coverage does not apply for bodily injury to a person:
>
> 1. While occupying, or when struck by, a motor vehicle that is not insured under this policy, if it is owned by you or any resident of your household.

Second, each UIM provision contained a reducing clause stating:

> Any amounts payable will be reduced by:
>
> 1. A payment made by the owner or operator of the underinsured motor vehicle or organization which may be legally liable.

In his complaint, the respondent alleged that he suffered damages of more than $225,000 due to the wrongful death of his wife, and he incurred at least $4,000 in medical expenses. He alleged that the appellant had paid $25,000 from the Trapino liability policy, $75,000 from the UIM provision of the Dodge Aries policy, and $2,000 from the medical expense provision of the Dodge Aries policy. He also claimed that he was entitled to receive an additional $25,000 from the Dodge Aries UIM provision, $100,000 from the UIM provision of the Dodge B200 policy, and $2,000 from the Dodge B200 policy's medical expense provision. He sought a judgment of $127,000.

In its answer, the appellant admitted that it had paid $25,000 from the Trapino liability policy, $75,000 from the Dodge Aries policy's UIM provision, and $2,000 from the Dodge Aries policy's medical expense provision. It refused to pay more, contending that it had

paid the full limits of the coverage available to the respondent for this accident.

On April 20, 1987, the appellant filed a motion for summary judgment. On September 2, 1987, the respondent filed a motion for declaratory judgment. In a memorandum decision dated September 2, 1987, the circuit court awarded summary judgment to the respondent and granted his motion for declaratory judgment. The court held that the drive-other-car exclusion and the reducing clause were prohibited by sec. 631.43(1), Stats. On October 6, 1987, in response to the respondent's motion for summary judgment in the amount of $125,000, the court entered judgment in the amount of $133,753.42, plus costs. This figure included the requested $125,000, plus interest (calculated at 12 percent) of $8,753.42.

On November 23, 1987, the appellant filed a notice of appeal challenging the decision of the circuit court. On February 16, 1988, we granted the respondent's petition to bypass the court of appeals. For the purposes of this appeal, the appellant agrees that it will pay an additional $2,000 from the medical expense provision of the Dodge B200 policy. However, it challenges the circuit court's holding that both the drive-other-car exclusion and the reducing clause are prohibited by sec. 631.43(1), Stats.

We first turn to the validity of the drive-other-car exclusion. Section 631.43, Stats., provides:

**631.43 Other insurance provisions. (1) General.** When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the

645

policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistant terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistant, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

(2) **Fraud as a defense.** Subsection (1) does not affect the right of an insurer to defend against a claim under the policy on the ground of fraudulent misrepresentation.

(3) **Exception.** Subsection (1) does not affect the rights of insurers to exclude coverages under s. 632.32(5)(b) and (c).

In ascertaining the proper scope to be given sec. 631.43(1), Stats., the language of the statute itself must first be considered. *State ex rel. Melentowich v. Klink,* 108 Wis. 2d 374, 379, 321 N.W.2d 272 (1982). The aim of all statutory construction is to discern the intent of the legislature in enacting the statute. *City of Waukesha v. Salbashian,* 128 Wis. 2d 334, 351, 382 N.W.2d 52 (1986); *Shands v. Castrovinci,* 115 Wis. 2d 352, 356, 340 N.W.2d 506 (1983). Moreover, when the legislature enacts a statute, it is presumed to act with full knowledge of existing laws, including statutes. *Mack v. Joint School District No. 3,* 92 Wis. 2d 476, 489, 285 N.W.2d 604 (1979); *In Interest of G. & L.P.,* 119 Wis. 2d 349, 354, 349 N.W.2d 743 (Ct. App. 1984).

Section 631.43(1), by its terms, applies when two policies promise to indemnify an insured against the same loss. Yet, the appellant maintains that sec. 631.43(1) does not apply unless the policies at issue promise to indemnify the insured against the same loss

*and* the coverage is statutorily mandated. Section 631.43(1) has no reference, explicit or inferential, which limits the application of the statute, as the appellant suggests, to cases involving statutorily mandated insurance coverage. Nothing in sec. 631.43(1) indicates that sec. 631.43 is to be applied only in connection with sec. 632.32(4), Stats.[1] Furthermore, nothing in the drafting record of sec. 631.43 sustains the position that the insurance coverage at issue must be mandatory before sec. 631.43 applies.

In *Welch v. State Farm Mutual Automobile Ins. Co.,* 122 Wis. 2d 172, 173, 361 N.W.2d 680 (1985), an uninsured motorist (UM) case, this court held that the legislature, in enacting sec. 631.43, Stats., voided reducing clauses which attempt to prohibit the stacking of multiple policy coverage of UM protection issued by the same insurer to the same insured.

Both the "drive other car" reducing clause and the "other automobile insurance in the company" re-

---

[1]Section 632.32(4), Stats., provides in relevant part, as follows:

**632.32 Provisions of motor vehicle insurance policies. ...**
　　**(4) Required uninsured motorist and medical payments coverages.** Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therin or supplemental thereto provisions approved by the commissioner:
　　(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.
　　. . .

ducing clause serve the same purpose: both clauses are an attempt to avoid the statutory prohibition of reducing clauses. ... The legislature clearly indicated its intent to invalidate attempts by insurers to avoid their statutory obligations to compensate the insured up to the aggregated policy limits of the insured's coverage by enacting the stacking doctrine. ... State Farm's inclusion of a "drive other car" exclusionary clause is such an attempt, and must therefore be invalidated. ... The extent of the insurance company's liability and payment is governed by the damages sustained, consistent with the provisions of sec. 631.43(1), Stats., up to the aggregated policy limits of the insured's coverage. Pursuant to this statute, the Welches are entitled to stack coverage under each of the policies, to the full amount of their damages, to the extent their damages do not exceed the aggregated policy limits of their uninsured motorist coverage.

*Id.* at 177–78 (citations omitted).

The appellant maintains, citing *Schwochert v. American Family Mutual Ins. Co.,* 139 Wis. 2d 335, 347, 407 N.W.2d 525 (1987), that the outcome in *Welch* is the result of the interrelationship between sec. 631.43(1), Stats., and the UM mandate in sec. 632.32(4), Stats. We disagree. In *Schwochert,* this court upheld the validity of a drive-other-car exclusion where the plaintiffs had UM coverage on their vehicle which was involved in the accident and had both UIM and UM coverage on their other vehicle which was not involved in the accident. This court simply reasoned that there can be no stacking of UIM insurance pursuant to sec. 631.43(1), Stat., when only one vehicle in the family is insured for UIM coverage because the insured did not have two or more policies which promised to indemnify him against the same loss.

The function of the "drive other car" exclusion in the present underinsured motorist endorsement is not to reduce the insured's underinsured motorist coverage recovery to that afforded by another policy *because there is no other insurance against his loss caused by an underinsured motorist.* The effect of the application of this exclusion from underinsured motorist coverage would be to exclude that coverage. It is not a reducing clause as considered in the uninsured motorist stacking cases of *Welch* and *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985) applying the stacking statute, sec. 631.43(1), Stats. This case is not a stacking case but an exclusion case and the stacking statute has no application.

*Id.* at 350–51 (emphasis added).

The fundamental difference between *Schwochert* and the case now before this court is that the function of the drive-other-car exclusion in this case is to reduce the respondent's UIM coverage to that afforded by another policy. Therefore, this case is different and distinguishable from the situation in *Schwochert.* More importantly, however, is that the limitation of the *Welch* holding, imposed in dictum in *Schwochert,* is simply unfounded and is hereby withdrawn. The ability to stack insurance coverage does not depend on whether or not the insurance coverage is statutorily mandated. This court will not read into sec. 631.43(1) a limitation which the legislature has not seen fit to include in the statute. We conclude, therefore, that the ability to stack insurance coverage depends solely on whether the two or more policies at issue promise to indemnify the insured against the same loss.

In the case before the court, the appellant has conceded that UIM coverage can be characterized as indemnity coverage. Both of the respondent's policies contained UIM provisions. Because the two policies promise to indemnify the respondent against the same loss, pursuant to the plain terms of sec. 631.43(1), Stats., no other provision of the policy issued by the appellant may reduce the aggregate protection of the respondent below the lesser of the actual loss suffered by the respondent or the total indemnification promised by the policies. Therefore, we hold that the drive-other-car exclusion contained in the UIM policy issued by the appellant is invalid and unenforceable under sec. 631.43(1), Stats. As a result, the respondent is entitled to stack the UIM coverage on his 1984 Dodge Aries with the UIM coverage on his 1978 Dodge B200.

We consider next the validity and effect of the reducing clauses found in the two UIM policies involved in this case. The appellant contends that the reducing clause in the UIM provision of each policy reduces the UIM benefits recoverable under the policy's limit by the amount received by the respondent from the underinsured driver's liability policy. The appellant maintains that sec. 631.43(1), Stats., does not apply in this situation to void the reducing clause, because each reducing clause reduces from the UIM benefits recoverable the amount received by the respondent from the underinsured driver's liability policy, and a liability policy is not an indemnity policy.

The appellant, as evidenced by its reliance on the court of appeals decision in *Kuehn v. Safeco Ins. Co. of America,* 140 Wis. 2d 620, 629–30, 412 N.W.2d 126 (Ct. App. 1987), ignores the fact that the language of sec. 631.43(1), Stats., does not make reference to "indemnity

policies." Rather, the statute makes reference to policies which "promise to indemnify." As a consequence, the applicability of sec. 631.43(1) cannot be simply ascertained by resorting to historical definitions of indemnity and liability insurance.[2] Rather, an analysis must be made on a case-by-case basis as to whether the particular liability policy at issue promises to indemnify the insured against the same loss as the other insurance policies involved.

As this court held in *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984), "Policies of liability insurance impose two duties on the insurer with respect to the insured—the duty to *indemnify* and the duty to defend" (emphasis added). The clause of a liability policy which defines the duty of an insurer to indemnify is that clause which generally states that the insurance company agrees to pay all sums which the insured is legally obligated to pay. *Id.* at 84–85.

Notwithstanding our disagreement with the analysis employed by the appellant, we agree with the appellant that the reducing clause in the UIM provision of each policy is valid. We find that sec. 631.43(1) does not apply in this instance because the liability policy at issue does not "promise to indemnify" the respondent; rather, it promises to indemnify the underinsured driver who owns the liability policy. As such, there are not two or more policies which promise to indemnify the respondent against the same loss. Consequently, we

[2]*See, e.g., Kuehn,* 140 Wis. 2d at 629 n. 3: "Indemnity contracts require the insurer to make whole the insured after an actual loss has been sustained; liability contracts require the insurer to protect the insured from making payment on a claim for which he is liable."

hold that the trial court erred in its finding that sec. 631.43(1) applied in this instance to void the reducing clauses at issue.

Therefore, we must now determine how to apply the reducing clause found in each UIM policy. Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Vidmar v. American Family Mutual Ins. Co.,* 104 Wis. 2d 360, 365, 312 N.W.2d 129 (1981), *overruled in part on other grounds, Welch,* 122 Wis. 2d at 179. *See also Ehlers v. Colonial Penn Ins. Co.,* 81 Wis. 2d 64, 74, 259 N.W.2d 718 (1977). The goal of construction is to ascertain the true intentions of the parties to the insurance contract. *Vidmar,* 104 Wis. 2d at 365. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. *Id.,* quoting *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. *Vidmar,* 104 Wis. 2d at 365, citing *Davison v. Wilson,* 71 Wis. 2d 630, 635–36, 239 N.W.2d 38 (1976).

We find that the words "amounts payable" found in the reducing clause in each UIM policy at issue are ambiguous. Consequently, we will construe the words in accordance with what a reasonable person in the position of an insured would have understood the words to mean. In this case, $100,000 of the UIM coverage was provided by the appellant in each policy issued. The respondent has suffered damages in excess of $225,000. The appellant argues that the reducing clauses reduce

the UIM benefits payable to the respondent under each policy by the amount paid to the respondent from the underinsured motorist's liability policy. If the appellant is allowed to offset its $100,000 liability to the respondent under each policy by the $25,000 paid by the tortfeasor's insurance carrier, the appellant will not be providing the $100,000 of UIM benefits it indicated it would pay on the declarations page of each policy.

Accepting the appellant's position, *i.e.*, that the "amounts payable" under a UIM policy should be reduced by payments made from the underinsured driver's liability policy, the appellant will *never* pay the policy limits of its UIM policies. For example, a policyholder purchases and pays a premium for UIM coverage with limits of $25,000. The insurance company would collect a premium for this coverage, but under no circumstances will the insured ever collect anything under that coverage. UIM coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused. *Schwochert,* 139 Wis. 2d at 346. In Wisconsin, liability coverage currently cannot be issued for less than $25,000. Section 344.33, Stats. Therefore, because underinsurance is only effective where a tortfeasor has liability coverage which must be for at least $25,000 in Wisconsin and since, under the position the appellant urges us to adopt, recovery under UIM coverage is reduced by any amounts received from any liability policies, the insurance company will never have to pay out on a $25,000 UIM policy. Thus, under the appellant's position, an underinsured liability limit is an illusion because an insured will never be entitled to recover up to that limit. *See, e.g., Paape v. Northern Assurance Co.,* 142 Wis. 2d 45, 48, 416 N.W.2d 665 (Ct. App. 1987), where the

insurer issued a policy for $15,000 worth of UIM coverage.

Consequently, we hold that coverage for each UIM policy involved in this case is available for that margin between the amount received by the respondent from the underinsured driver's liability policy and the actual damages suffered by the respondent. We find that a reasonable person in the position of an insured would understand the words "amounts payable" to be the equivalent of damages compensable because when purchasing UIM coverage, we believe that a reasonable insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage.

Furthermore, this interpretation is consistent with the purpose of UIM coverage as announced by this court. The purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries. *Schwochert*, 139 Wis. 2d at 346. As we have previously noted,

> While it was asserted ... that the protection afforded by underinsured coverage was in each case to be reduced by the amount of liability coverage carried by the underinsured motorist, we see no policy provision that so provides. It would not appear that a reduction of "any amount payable" by reason of the payment by another person liable effects a limitation of the potential liability under any coverage. It would appear, rather, that the amount payable reduction merely prevents a duplication of a payment made by another....

654

*Vogt v. Schroeder,* 129 Wis. 2d 3, 18 n. 7, 383 N.W.2d 876 (1986). "[U]nderinsurance benefits constitute the insurance coverage for damages in excess of the tortfeasor's insurance coverage." *Id.* at 32 (Steinmetz, J., concurring). "[T]he limit of the underinsurer's liability is for the amount of damages suffered by the insured in excess of the liability limits of the tortfeasor." *Id.,* at 28–29.

Our approach in this case is similar to the approach followed by the Ohio Supreme Court in *Gomolka v. State Automobile Mutual Ins. Co.,* 15 Ohio St. 3d 27, 472 N.E.2d 700 (1984). In *Gomolka,* the insured (appellee) recovered the $100,000 liability coverage limit from the third party's automobile insurance carrier. The insured then made a claim against her own automobile insurer under her UIM coverage. The insurer (appellant) claimed that it was entitled to a $100,000 reduction in the amount it was required to pay under its UIM coverage. The appellant relied on language in its policy providing that the amount payable under its coverage shall be reduced by all sums paid by or on behalf of the third party.

The Ohio Supreme Court rejected this contention:

> The appellant argues, in effect, that the words, "any amount payable" should be interpreted to mean "the total amount of coverage provided, if payable." The appellee, on the other hand, would interpret "any amount payable" to mean "any damages compensable." We find this latter interpretation clearly to be the most reasonable.
>
> Appellant's "interpretation" is, in reality, an "insertion." State Auto would have the court read additional terms into its policy. The appellee's interpretation, however, equates "amount payable" to "damages compensable" by looking to the plain

meaning of the policy's terms and by focusing on the nature and purpose of uninsured/underinsured motorist coverage. When purchasing this coverage, an insured expects to be protected against a loss caused by another that is not covered by that other person's insurer. Thus, an "amount payable" under uninsured/underinsured motorist coverage is an *amount of damages suffered* by the insured, which amount is greater than the insurance coverage held by the party causing the damages.

15 Ohio St. 3d at 29, 472 N.E.2d at 702–03 (emphasis in original).

In the case before the court, the appellant has insured the respondent for $100,000 of UIM coverage in each UIM policy, for a total of $200,000 in UIM coverage. The respondent has received $25,000 on behalf of the underinsured driver. The reducing clauses found in the UIM policies, therefore, operate to reduce $25,000 from the total damages sustained by the respondent, which, at a minimum, are greater than $225,000. The respondent has thus far received $75,000 in UIM benefits from the appellant. Consequently, we affirm the circuit court's order granting summary judgment in favor of the respondent and awarding the respondent $133,753.42 plus costs.

In conclusion, we hold that the drive-other-car exclusion in a UIM provision is invalid and unenforceable under sec. 631.43(1), Stats. In addition, we hold that the reducing clause in the UIM provision of each insurance policy at issue in this case does not reduce UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. Rather, the "amounts payable" from each UIM provision at issue in this case

are measured against the insured's total damages, and the reducing clauses reduce UIM benefits by subtracting from the total damages sustained by the insured the amount received by the insured from the underinsured driver's liability policy.

*By the Court.* The judgment of the circuit court is affirmed.

CALLOW, J. (dissenting). I would reverse the judgment of the circuit court and hold that both the "drive other car" exclusion and reducing clause are valid and enforceable. In addition, I would conclude the reducing clause in this contract provides that the "amounts payable" under the underinsured motorist (UIM) provision consist of the benefits payable under the limits of the policy less the amount received from the underinsured driver's liability policy.

The first issue of concern is the validity of the "drive other car" exclusion. The majority concludes this clause is invalid under sec. 631.43, Stats. Section 631.43(1), Stats., by its terms, only applies "[w]hen 2 or more policies promise to indemnify an insured against the same loss." Contrary to the majority's conclusion, there are not two or more policies which promise to indemnify Wood for this loss. The Dodge B200 policy specifically states it does not apply for bodily injury to a person "[while] *occupying,* or when struck by, a motor vehicle that is not insured under this policy, if it is owned by *you* or any resident of *your* household." In this case, the bodily injury occurred while Donna Wood was occupying the Dodge Aries, a motor vehicle the Woods owned which was not insured under the Dodge B200 policy. Thus, only the Aries policy promises to indemnify Wood for this loss. Because only one policy promises to indemnify the insured, sec. 631.43(1) does

not apply and Wood should not receive $100,000 from the Dodge B200 UIM policy.

This case is very different from *Welch v. State Farm Mutual Automobile Insurance Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985), in which we invalidated a similar "drive other car" exclusion in an uninsured motorist (UM) policy. The Welches owned two cars. A separate $100,000 UM policy was issued for each car. While occupying one of the cars, the Welches were involved in an accident in which the damages exceeded $200,000. Only because of the portable nature of UM insurance did the UM provisions in *Welch* satisfy the requirement of sec. 631.43(1), Stats., that "2 or more policies promise to indemnify an insured against the same loss." We held that the statute allowed them to stack their two UM policies and recover $200,000. *Welch,* 122 Wis. 2d at 178.

In *Welch,* this court found that in enacting uninsured motorist statute, sec. 632.32(4), Stats., the legislature intended that UM insurance be portable. *Id.* at 180–81, *Schwochert v. American Family Mutual Insurance Co.,* 139 Wis. 2d 335, 348, 407 N.W.2d 525 (1987). A policy is portable when it covers the insured whether or not he or she is occupying the insured vehicle. Thus, although the Welches were not occupying the nonaccident vehicle, that vehicle's policy, because it was portable, was available to cover their loss. We concluded that it was the combined effect of the stacking and uninsured motorist statutes which invalidated the "drive other car" clause: "[w]e hold that 'drive other car' exclusionary clauses are contrary to the legislative policy and express legislative intent embodied in this state's uninsured motorist and stacking statutes." *Welch,* 122 Wis. 2d at 181.

When this court considered the question of the portability of an UIM policy in *Schwochert,* 139 Wis. 2d at 348, we stated "[t]here is no statute that reflects any legislative intent that underinsured motorist coverage be portable. The portability of (sic) aspects of underinsured motorist coverage is solely dependent upon the provisions of the insurance contract that establishes it." Clearly the insurance contract in this case, the Dodge B200 policy, does not provide for portable UIM coverage. Only the Aries policy promises to indemnify Wood for this loss. Thus, sec. 631.43(1), Stats., which is dependent on a circumstance when two or more policies promise to indemnify an insured, a situation that does not exist in this case, cannot apply and the "drive other car" clause should be held valid.

In addressing the validity of the reducing clause, the majority, in dicta, incorrectly concludes that sec. 631.43(1), Stats., may apply to both indemnity and liability policies. Majority opinion at page 651. Section 631.43(1) only applies when two policies "promise to indemnify" an insured. As the court of appeals has correctly recognized, liability insurance is distinct from indemnity insurance. *Landvatter v. Globe Security Insurance Co.,* 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980). Had it chosen to, the legislature could have applied sec. 631.43(1) to all insurance policies, but it did not. Both the statute's express language and its legislative history make this conclusion inescapable.

Section 631.43(1), Stats., originated as sec. 203.11, Stats. (1973), which pertained only to fire insurance. In 1975, that statute was broadened to include all indemnity coverage. The majority insists that the legislature did not have in mind the "historical definitions of indemnity and liability insurance" because it refers to policies which "promise to indemnify" rather than to

"indemnity" policies. Majority opinion at pages 650–651. The majority has misread the legislative intent. The committee note to the 1975 amendment unequivocally states the legislative purpose in expanding the provision to its present form when it declares "[t]his section is adapted from s. 203.11, but extended to all *indemnity* coverage, including the indemnity coverages in disability insurance." Ch. 375, sec. 631.43, Stats. (Note), 1975 Wis. Laws 1177 (emphasis added). Both the text of the amendment and legislative history of the provision lead me to conclude that the legislature deliberately retained the traditional distinction between liability and indemnity coverage.

While the majority insists that sec. 631.43(1), Stats., applies to liability policies, it concludes that the provision does not invalidate the reducing clause in this case. However, although it contradicts the circuit court's opinion on this issue, the majority also concludes that the valid reducing clause in this UIM policy reduces benefits by "subtracting from the total damages sustained by the insured the amount received by the insured from the underinsured driver's liability policy." Majority opinion at page 657.

In reaching its conclusion, the majority insists that the insurance policy is ambiguous. An examination of the Woods' policy in this case, however, reveals that its terms are absolutely clear. The policy plainly prohibits the recovery allowed by the majority opinion. The reducing clause is effective to reduce the amount payable under the policy limit by the amount received from the underinsured driver's liability policy. The clause does not subtract the amount received from the total amount of damages. The policy carefully explains the policy limits. It then states:

*[w]e* will pay no more than these maximums no matter how many vehicles are described in the declarations, *insured persons,* claims, claimants or policies or vehicles are involved in the accident.

Any amounts payable will be reduced by:

1. A payment made by the owner or operator of the *underinsured motor vehicle* or organization which may be legally liable.

There can be no doubt that the words "amounts payable" have clear reference to the limits of the policy. Interpreting the contract in a straightforward and clear way, the conclusion is inescapable that under the plain terms of the contract, the "amounts payable" consist of benefits payable under the limits of the policy reduced by the amount received from the underinsured motorist's liability policy. The insured will never receive less in compensation than the amount of the UIM coverage limit. The UIM policy will make up the amount of damages not covered by the tort-feasor's insurance up to that limit. It is improper for this court under the guise of interpretation to modify this clear and unambiguous insurance contract which was freely negotiated and consummated by both parties.

For these reasons I respectfully dissent.

I am authorized to state that Justice Donald W. Steinmetz joins in this dissenting opinion.