IN RE NATIONWIDE INSURANCE COMPANY, APPELLANT; STOBBS, APPELLEE.

[Cite as In re Nationwide Ins. Co. (1989), 45 Ohio St. 3d 11.]

(No. 88-859—Submitted April 25, 1989—Decided August 16, 1989.)

*Freifield, Bruzzese, Wehr, More-land, Straus & Spahn* and *Frank J. Bruzzese,* for appellant.

*Lancione & Davis Law Office Co., L.P.A.,* and *Richard L. Lancione,* for appellee.

H. BROWN, J.

I

The first issue before us is whether Nationwide may set off the amount of

compensation paid on behalf of the tortfeasor against the limits of Stobbs' uninsured motorist coverage.

The court of appeals found that language in the uninsured motorist coverage of the policy under a provision entitled "Limits of Payment" was contradictory to the trust agreement provision of that coverage and should be construed against the insurer. The language relied upon by the court of appeals reads:

"AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES

"* * *

"3. *Any amount payable* to or for the insured under this coverage will be reduced by any amount paid by or for any liable parties." (Emphasis added.)

The court, relying upon *Gomolka* v. *State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27, 15 OBR 67, 472 N.E. 2d 700, ruled that the phrase "[a]ny amount payable" means the amount of damages suffered by Stobbs, or $175,000. Thus, the $100,000 payment by the tortfeasor's insurer would apply as a setoff to the $175,000 damages suffered by Stobbs, rather than as a setoff against the $100,000 coverage afforded by Nationwide's policy.

Notwithstanding *Gomolka, supra,* we think the language of appellee's insurance policy, together with the release and trust agreement, clearly indicates that the payment made on behalf of the tortfeasor must be set off directly against the limits of the uninsured motorist coverage.

The policy provides that in the event of bodily injury caused by an uninsured motorist,[2] Nationwide would pay Stobbs up to $100,000. The uninsured motorist coverage of the policy contains a provision entitled "Trust Agreement," which states in part:

*"To the extent of any payment we made under this coverage, we are entitled to any payment made to the insured by any legally liable party.* The insured will hold in trust for us his rights of recovery against any such party. The insured will do whatever is proper to secure such rights, and will do nothing to prejudice them. All related and necessary papers and instruments will be executed and delivered to us. The insured must take any necessary action in his name to recover for us payments made under this coverage. *The insured must repay us out of any recovery for any payments we have made* and any expenses we have incurred in the action. * * *" (Emphasis added.)

Pursuant to this provision, Nationwide and Stobbs executed a "Release and Trust Agreement — UMC," which provided in part:

"* * * In consideration of * * * [the $100,000] payment, the undersigned, * * * agrees to take, through any representative designated by Nationwide, such action as may be necessary or appropriate to recover the damages suffered by the undersigned * * * from any person * * * who * * * may be legally liable therefor *and to hold any monies recovered from such person * * ** as a result of judgment or

---

[2] At the time of Nationwide's payment to Stobbs, the tortfeasor was an *uninsured* motorist. Subsequently, he became an *underinsured* motorist because his carrier was ordered to cover him and his policy limits were less than Stobbs' total damages. Despite that change in status, the parties stipulated to the trial court that the tortfeasor should be treated as an uninsured motorist and that his status did not change upon the payment by his insurance company of $100,000 to Stobbs and Nationwide. We need not determine the tortfeasor's status because it is irrelevant to our disposition of the issues before us.

*as a result of settlement* with or without litigation, *in trust for Nationwide to be paid to Nationwide immediately upon recovery thereof.* * * *'' (Emphasis added.)

In addition to the unequivocal policy language, R.C. 3937.18(E), effective June 23, 1982 (formerly designated [C] and effective October 1, 1970) provides the insurer with a right of setoff to the extent of payment made.[3]

We construed a similar statutory right of setoff in *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d 272. *James* distinguishes *Gomolka* by stating that the Gomolka policy did not clearly provide for a setoff against the limit of uninsured and underinsured motorist coverage. *Id.* at 390, 18 OBR at 443, 481 N.E. 2d at 275. The Gomolka policy apparently did not contain a provision similar to the Stobbs trust agreement and apparently Mrs. Gomolka did not execute a release and trust agreement similar to the one executed by Stobbs. Many appellate courts faced with this issue also concluded that *Gomolka* does not preclude

a setoff against the limits of the policy so long as the policy unambiguously so provides. See, *e.g., Costello* v. *Nationwide Ins. Co.* (Mar. 31, 1989), Mahoning App. No. 87 C.A. 150, unreported.

In *James, supra,* we found that a setoff from the limits of underinsured motorist coverage is not contrary to the public policy behind the enactment of R.C. 3937.181(C)[4] (repealed June 23, 1982; essentially subsumed within R.C. 3937.18), so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation which is less than what he would have received if he had been injured by an uninsured motorist. *James, supra,* paragraph two of the syllabus. These guidelines are applicable to the facts before us. The setoff is clearly set forth in the terms of the policy as well as in the release and trust agreement. The setoff provision does not lead to an inconsistent or unfair result. Whether the tortfeasor was uninsured or underinsured, the amount of compensation which Stobbs is entitled to receive is at least $100,000.[5]

---

[3] R.C. 3937.18(E) provides in relevant part:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. * * *''

[4] In *James, supra,* at 389, 18 OBR at 443, 481 N.E. 2d at 274-275, we stated that

the intent behind the enactment of R.C. 3937.181(C) was to close the "underinsurance loophole" in uninsured motorist coverage to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist.

[5] If the tortfeasor was uninsured Nationwide would have to pay Stobbs $100,000. If the tortfeasor was underinsured and had, for example, a policy limit of $50,000, then this amount would be set off against the total limits of her policy and Stobbs would receive $50,000 from Nationwide. In no event would Stobbs receive a total amount of compensation less than the $100,000 limit of her policy.

Accordingly, we hold that a setoff against the limits of underinsured and uninsured motorist coverage is permitted under R.C. 3937.18(E), provided that the setoff is clearly set forth in the provisions of the insurance policy. To the extent the language contained in *Gomolka, supra,* is inconsistent, that language is overruled.

## II

In the trial court and in the court of appeals, Stobbs argued that she is entitled to retain all expenses, court costs and attorney fees incurred by her in collecting the $100,000 from the tortfeasor's insurer — even if the Release and Trust Agreement is enforceable. The lower courts failed to adequately rule on this argument.

Stobbs' argument is grounded upon this language from the release and trust agreement:

"* * * provided, however, that any sum recovered in excess of the amount paid to the undersigned by Nationwide as consideration for this Release and Trust Agreement plus all expenses, court costs and attorney fees in connection therewith shall be retained by the undersigned * * *."

In this case, no sum was recovered in excess of the amount paid to Stobbs by Nationwide. Thus Stobbs is not entitled to expenses, attorney fees or court costs.

Accordingly, we reverse the decision of the court of appeals and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J, SWEENEY, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

RESNICK, J., dissents.