**Hoppel**
v.
**Farmers Insurance Company of Columbus, Inc.**
*[Cite as 4 AOA 228]*

*Case No. 88-C-59*
*Columbiana County, (7th)*
*Decided June 10, 1990*

*Bernard Fineman, 108 East Sixth Street, East Liverpool, Ohio 43920, for Joseph W. Hoppel, et al, Individually and as Administrator, and Susan K. Hoppel, nka Susan K. Leon.*

*Charles R. Janes, One Columbus, 10 West Broad Street, Columbus, Ohio 43215, for Farmers Insurance Company of Columbus, Inc.*

*William L. Hawley, 500 Second National Tower Warren, Ohio 44486, for Nationwide Mutual Insurance Co.*

O'NEILL, P.J.

This case had its genesis in an automobile accident wherein multiple persons were killed and injured and there were multiple insurance coverages and policies involved. We, however, are concerned in this appeal only with a distinct matter between Joseph W. Hoppel, individually and as administrator of the estate of Joseph W. Hoppel, II, deceased, et al v. Nationwide Mutual Insurance Company. The relationship between Nationwide and Joseph Hoppel was involved in a policy issued by Nationwide containing uninsured and underinsured coverage. Joseph W. Hoppel, individually and as administrator of the Estate of Joseph W. Hoppel, II, had previously received as settlement of a claim involving Joseph Hoppel, II, the sum of $80,000.00 from another insurance company. The uninsured/underinsured coverage of the Nationwide Insurance policy contained a maximum coverage of $100,000.00. Joseph Hoppel, the administrator, executed a settlement and release with Nationwide Insurance in the sum of $20,000.00, being the difference between the $80,000.00 previously received and the maximum coverage contained in the Nationwide Insurance policy. The plaintiffs-appellees eventually filed a complaint in the trial court requesting the court to set aside the previously executed compromise and settlement alleging that a mutual mistake had been made. It was alleged that representatives of the Nationwide Insurance Company had furnished counsel for the plaintiff-appellee what purported to be the insurance policy in force and effect at the time of the accident. Subsequent to the settlement, it was developed that a different policy was in force and effect at the time of the accident. Essentially, it was the contention of the plaintiff-appellant that the language of the insurance policy which was, as a matter of fact, in force at the time of the accident was unclear and ambiguous and called that a set-off be made only

against the total damages suffered by the plaintiff rather than a set-off against the total amount of coverage provided.

Following the filing of various stipulations of facts and exhibits, depositions and an evidentiary hearing, motions for summary judgment were filed and the court came on for final judgment in the case finding in behalf of the plaintiff-appellant upon the issue involved in this appeal. There was a stipulation filed in the trial court which stated:

"Plaintiffs and Nationwide were mutually mistaken as to the actual Nationwide Insurance policy in effect at the time the release and trust agreement was executed by and between plaintiffs and Nationwide."

The first assignment of error complains that the setting aside of the release by the trial court was contrary to law and prejudicial to appellant Nationwide.

There is no question that, as a result of the execution of the release with Nationwide, the plaintiff-appellant received from Nationwide the sum of $20,000.00. At the filing of the action to set aside this release, the plaintiff-appellant did not tender back or offer to tender back the $20,000.00 previously received. Appellant argues that this failure of tender, on the part of the plaintiff-appellee, was a bar to the court proceeding with the action and eventually rescinding the release.

As we have previously stated, the plaintiff-appellant, prior to the execution of the release involved herein, had received $80,000.00 from another insurance company. The coverage afforded by Nationwide Insurance, at the time of the accident, was in the amount of $100,000.00. The issue between plaintiff-appellee and Nationwide, as to the total amount payable to the plaintiff-appellee has not, prior to the execution of the release nor at this time, gone to arbitration wherein a gross amount could be determined. There is a possibility but hardly a probability, that the total amount payable, to be determined by arbitration, would be less than $100,000.00. Under such circumstances, we conclude that the plaintiff-appellee would be entitled to recover eventually, at the least, the sum of $20,000.00. We find authority to the effect that, wherein rescission of a compromise and settlement is requested and the plaintiff therein has previously received payment, it is entitled to that payment irrespective of the question whether the settlement was valid or invalid. There is no reason why the plaintiff should be compelled to pay to the defendant monies previously received. *Bebout* v. *Bodle*, (1882), 38 Ohio St. 500, 505. See also *In Re: Estate of Gray* (1954), 162 Ohio St. 384.

This first assignment of error is found to be without merit.

The second assignment of error complains that the setting aside of the release by the trial court was contrary to the manifest weight of the evidence and prejudicial to appellant Nationwide.

Prior to the time that the release was executed between the appellant and Nationwide Insurance Company, counsel for the appellant had been furnished a copy of the insurance policy which was supposedly in effect at the time of the accident. The form number of that policy was 6161B. Subsequent to the release and settlement, it was determined that form number 6161B was not the policy in effect but was rather form number 4821. Form number 4821 contained, amongst its various provisions, the following:

"Any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who as an insured under this coverage shall be reduced by (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy * * *."

This identical policy and identical language had received this court's attention in the case of *Grange Mutual Casualty Co.* v. *Casseday* (C.A. 7, 1988), Case No. 87-C-59, Unreported. It was our conclusion in that case that, pursuant to *Gomolka* v. *State Auto Mutual Ins. Co.* (1984), 15 Ohio St. 3d 27, the term "any amount payable" meant any damages compensable to the covered party. This same conclusion had been reached by the trial court in that case. Pursuant to that decision, the $80,000.00, which the plaintiffs-appellees in this case had received, would be set off not against a gross figure of $100,000.00 but rather set off against the total damages which had been suffered by the plaintiffs-appellees and the decedent and which figure would be the subject of an arbitration proceedings.

The policy (6161B), which counsel for the plaintiffs-appellees was led to believe was in force and effect at the time of the accident, contained the following provision:

"AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES. Our obligation to pay uninsured motorists losses is limited to the amounts per person and per occurrence stated in the attached Declarations. The following conditions apply to these limits:

"* * *

"3. Any amount payable to or for the insured under this coverage will be reduced by any amount paid by or for any liable parties."

However, Nancy Hardgrove had at all times, prior to the settlement negotiated between the plaintiff-appellee and Nationwide Insurance, represented that there was also in effect, at the time of this accident, Endorsement 1604. Endorsement 1604 read as follows:

"This endorsement amends your policy's uninsured motorist coverage:

"* * *

"3. The limits of this coverage and/or any amounts payable under this coverage will be reduced by any amount paid by or for any liable parties."

It is true that this endorsement contained the phrase "amounts payable" as received the focus of *Gomolka*, but this endorsement also clearly stated that the limit of the coverage would be reduced by any amount paid by or for any liable parties. It follows then that this Endorsement No. 1064 more clearly approached the issue raised in *James* v. *Michigan Mutual Insurance Co.* (1985), 18 Ohio St. 3d 386. Syllabus two of that case read as follows:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

The *James* court, by way of dicta, stated at page 389:

"The setoff provision set forth in the endorsement to the appellee's insurance policy states that '*the limit of liability shall be reduced* by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.' (Emphasis added.) Even under a construction most favorable to the insured, this provision is clear and unambiguous, and we would be altering the plain terms of the appellee's insurance policy if we were to limit the application of the setoff described herein only to instances where the insured has been fully compensated for all of his injures."

We can conclude that the mistaken misrepresentation by an agent of Nationwide to counsel for the plaintiff-appellee, that Endorsement 1604 had application, would certainly lead counsel to conclude that this client was entitled to only $20,000.00. The mistake was a mutual mistake on the part of the plaintiff-appellee and on the part of the defendant-appellant. The mutual mistake was a material mistake.

"It is one of the principles of equitable jurisdiction that a court of equity will grant relief, as may be required by the circumstances, from the consequences of any mistake of fact which is a material element of the transaction, and which is not the result of the mistaken party's own violation of some legal duty, provided that no adequate remedy can be had at law." 13 Ohio Jur. 294-296, Cancellation Etc. of Instruments, Sec. 24.

A complaint praying for rescission of a release is directed to the discretion of the trial court. The exercise of that discretion must be of sound and reasonable discretion based upon grounds that make it judicial and may not be exercised in an arbitrary manner.

Upon our review of this case, we cannot conclude that the final judgment of the trial court was an abuse of discretion.

*Judgment affirmed.*

DONOFRIO, J., and COX J., concur.