## Blackburn v. Hamoudi
*[Cite as 7 AOA 382]*

*Case No. 89AP-1102*
*Franklin County, (10th)*
*Decided September 18, 1990*

Glenn W. Myers and Kevin R. McDermott, Squire, Sanders & Dempsey, for Appellees and Cross-Appellants.

David G. Bale and Alan Wayne Sheppard, Sheppard & Bale, for Appellant.

Louis E. Gerber and James P. Connors, Arter & Hatten, for Appellee Ala B. Hamoudi.

REILLY, P.J.

This case arose from the following automobile accident. Approaching a stop sign at a "T" intersection, defendant Dr. Ala B. Hamoudi failed to yield before entering the intersection. This caused a second car driven by defendant Susan Birhanzl to go left of center, swerve back to the right berm to avoid oncoming traffic and ultimately strike plaintiff Buford Ann Blackburn, who was standing on the berm of the road. As a result, Mrs. Blackburn was severely injured.

Each of the three accident participants had in effect a policy of automobile liability insurance. Dr. Hamoudi had insurance in the amount of $100,000 per person, with a $300,000 limit per accident. Ms. Birhanzl was insured for up to $50,000 per person and $100,000 per accident. Mrs. Blackburn had a policy with Grange Mutual Casualty Company, which provided liability insurance in the amount of $100,000 per person and $300,000 per accident. Mrs. Blackburn also had uninsured and underinsured motorist coverage (UM policy) with corresponding limits.

Plaintiffs, Mr. and Mrs. Blackburn, subsequently filed suit against Dr. Hamoudi and Ms.

Birhanzl alleging negligence. As Ms. Birhanzl had less insurance coverage than the limits of plaintiffs' UM policy, plaintiffs also made a claim against Grange Mutual for underinsured motorist coverage. Grange Mutual initially denied coverage and extensive negotiations between plaintiffs and Grange Mutual continued over the next year. Grange Mutual offered a settlement of $175,000. The amount was paid pursuant to the case of *Auto-Owners Mut. Ins. Co. v. Lewis* (1984), 10 Ohio St. 3d 156[1], which held that where two separate and independent causes of action arise from a single injury, the policy's per person limits apply separately to each cause of action. Since Mrs. Blackburn claimed damages for her injuries and Mr. Blackburn claimed damages for loss of consortium, Grange Mutual applied two separate coverage limits of $100,000. In return for the settlement, plaintiffs released Grange Mutual from further liability under the UM policy. Further, Grange Mutual released its right of subrogation against Ms. Birhanzl in order to facilitate settlement.

Plaintiffs also continued to prosecute their negligence suit against Ms. Birhanzl and Dr. Hamoudi. Three weeks before the case went to trial, Grange Mutual sought to intervene as a plaintiff, claiming subrogation rights against Dr. Hamoudi for the $175,000 paid to plaintiffs. Grange Mutual's complaint sought a judgment against Dr. Hamoudi and a declaration of rights as between Grange Mutual and its insureds, the plaintiffs. The trial court denied the motion to intervene solely on the grounds that the motion was not timely filed.

Grange Mutual promptly appealed that decision to this court. During the pendency of the appeal, the underlying dispute went to trial and judgment was entered in favor of plaintiffs. The trial court found Dr. Hamoudi and Ms. Birhanzl to be joint tortfeasors, fifteen and eighty-five percent negligent respectively. Judgment was awarded against Ms. Birhanzl in the amount of $688,500 and against Dr. Hamoudi in the amount of $121,500. The record indicates that both judgments were satisfied and releases given by plaintiffs.

On Grange Mutual's appeal of the trial court's denial of its motion to intervene, this court reversed the trial court in *Blackburn v. Hamoudi* (1986), 29 Ohio App. 3d 350. This court held that it was error to deny Grange Mutual's motion solely on the grounds that it was filed shortly before trial. Assuming that

Grange Mutual had an enforceable right of subrogation, this court held that Grange Mutual's claimed interest would, as a practical matter, be impeded if Grange Mutual was denied the opportunity to participate in the trial. The court did not, however, reach the issue of whether Grange Mutual had a right to subrogation under these circumstances. We directed the trial court to consider this issue.

Upon remand, plaintiffs, Dr. Hamoudi, and Grange Mutual all filed for summary judgment on Grange Mutual's subrogation claim. Further, plaintiffs brought a cross-claim against Grange Mutual alleging bad faith to which Grange Mutual responded with a motion for summary judgment. After a motion for judgment on the pleadings, Ms. Birhanzl was dismissed as a party-defendant and is not a party to this appeal. The trial court entered summary judgment against Grange Mutual on the subrogation claim and against plaintiffs on the bad faith cross-claim.

Grange Mutual filed this appeal, including the following assignment of error:

"The trial court erred in ruling that where underinsured motorist coverage is triggered by fault of an underinsured tortfeasor who is one of two joint tortfeasors having joint and several liabilities to the insured, the insurer paying the underinsured motorist claim has no right to subrogation on its payment against the joint tortfeasor who is not defined as underinsured under the underinsured motorist policy or the underinsured motorist statute."

The resolution of this assignment of error requires this court to address three separate issues. We must first define Grange Mutual's right to subrogation generally, then we will address Grange Mutual's separate and independent right to set-off. Finally, we will resolve the central question raised in this assignment of error; whether Grange Mutual's policy of insurance and the applicable statute, R.C. 3937.18, permit an underinsured motorist carrier to set-off payments made by or on behalf of, or subrogate the insured's claim against, a fully insured joint tortfeasor.

Summary judgment may be granted only when there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to but one conclusion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317. In this case, the parties have stipulated to the revel ant facts

and no issues of fact remain to be determined. All that remains is a determination as to the meaning and effect of Grange Mutual's policy and R.C. 3937.18.

Grange Mutual alleges in its complaint that it has a right to subrogate plaintiffs' right of recovery against Dr. Hamoudi to the extent of its payment, $175,000. Subrogation is defined as "the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities ***" Black's Law Dictionary, page 1279. "The legal doctrine of subrogation has long been recognized as an insurer's derivative right. ***" *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St. 3d 22, 29. The subrogee stands in the shoes of the subrogor and is entitled to all the rights and remedies available to the subrogor to the extent of the subrogee's interest.

The Supreme Court has held that a subrogation clause is reasonably part of contracts providing underinsured motorist insurance. *Bogan, supra,* at 29. The court has also sanctioned a variety of contractual provisions designed to protect the right of subrogation. See *Bogan, supra; Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St. 3d 159; *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St. 3d 27.

In asserting its right of subrogation, Grange Mutual relies on the trust agreement included in the policy and R.C. 3937.18(E). The trust agreement provides as follows:

"8. Trust Agreement. In the event of payment to any person under this coverage:

"A. the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

"B. such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this coverage[.]"

Former R.C. 3937.18(E), effective June 23, 1982 and applicable to the policy in this case, provides, in part:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made ***."

A comparison of the trust agreement and the statute shows that Grange Mutual's provision is drawn almost word for word from the statute. Thus, the trust agreement provides Grange Mutual any and all of the rights granted by the statute. In *Bogan, supra,* the Supreme Court construed this section and held that it grants insurers an enforceable right of subrogation. The court must, therefore, conclude that Grange Mutual has, in the abstract, an enforceable right of subrogation.

Any right Grange Mutual has to subrogate plaintiffs' right of recovery against Dr. Hamoudi is, however, limited. "*** An established, general rule of subrogation is that where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek set-off from the limits of its coverage *until the insured has been fully compensated for his injuries. ***" James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 388, citing *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382 (emphasis original). As Grange Mutual has not alleged that plaintiffs interfered with its subrogation rights, it may only recover through subrogation once plaintiffs have been fully compensated for their injuries.

This rule does not prevent Grange Mutual from intervening in plaintiffs' suit against Dr. Hamoudi and Ms. Birhanzl. The rule only limits Grange Mutual's recovery from the damages assessed against Dr. Hamoudi and Ms. Birhanzl. Under the *Newcomb* rule, Grange Mutual still has a right to intervene, although its recovery may ultimately be limited.

The parties have, in their briefs, also raised a right separate and distinct from subrogation. This is the right of set-off. While the parties' arguments tend to join the issue of set-off with the issue of subrogation, the two rights are conceptually distinct. Any confusion may stem in part from a number of Supreme Court decisions which intermingle the rights of set-off and subrogation. Grange Mutual sought in its complaint not only a judgment against Dr. Hamoudi because of its subrogated interest, but

also a declaration of rights between Grange Mutual and its insureds, the plaintiffs. As the set-off provision is relevant to the rights of Grange Mutual against plaintiffs, they are entitled to summary judgment only if Grange Mutual, as a matter of law, has no right to set-off Dr. Hamoudi's payment to plaintiffs from its own limit-of-liability.

Grange Mutual's UM policy includes a set-off provision, which provides:

"B. Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by all sums paid on account of such bodily injury by or on behalf of:

"1. the owner or operator of the uninsured motor vehicle, and

"2. any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the Bodily Injury Liability Coverage of the policy."

Further, R.C. 3937.18(A) (2) also provides that:

"*** The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance polices covering persons liable to the insured."

While a set-off provision is typically relied on by an insurer to reduce or eliminate payments made to the insured in the first instance, the insurer may also be granted a right to set-off payments made by the tortfeasor after the insurer has already made its payment to the insured. The Supreme Court considered such a situation in the case of *In re Nationwide Ins. Co.* (1989), 45 Ohio St. 3d 11. In that case, the uninsured motorist carrier made a payment of $100,000 (the limit of the carrier's liability) to its insured. The insured subsequently recovered $100,000 from the tortfeasor. The uninsured motorist carrier then sought to recover this $100,000 payment from its insured in order to reimburse the carrier for its initial payment. The court held that a set-off under these circumstances was permissible and cited the set-off provision and trust agreement in the policy of insurance and R.C. 3937.18(E) as authority for the set-off. Thus, R.C. 3937.18(E) grants uninsured motorist carriers two different rights: one

of subrogation, *Bogan, supra;* and one of set-off, *Nationwide, supra.*

If Grange Mutual is permitted to set-off payments made by insured joint tortfeasors, it is plain that Grange Mutual's limit of liability under the policy would be off-set by the payments made by Dr. Hamoudi and Ms. Birhanzl. Plaintiffs contend that a tortfeasor's payment is set-off under the terms of this policy, not from the policy's limit of liability, but from the total damages suffered by plaintiffs. Their reliance on *Gomolka v. State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27, for this proposition, however, is misplaced. Although *Gomolka* supports plaintiffs' position, the Supreme Court subsequently reconsidered the issue in the case of *Nationwide, supra.* In that case, the court considered the same argument concerning an uninsured motorist policy which contained a trust agreement and set-off provision similar to those included in Grange Mutual's policy. The court reaffirmed the rule announced in *James, supra,* paragraph two of the syllabus, that an insurer may apply payments made by or on behalf of an underinsured motorist as a set-off directly against the limits of its underinsured motorist coverage, if the set-off is clearly set forth in the terms of the policy. Notwithstanding *Gomolka,* the court held that policy language indistinguishable from that included in the Grange Mutual policy clearly granted the insurer the right to set-off payments made by or on behalf of a tortfeasor directly against the limits of the underinsured motorist coverage. Further, the court overruled *Gomolka* to the extent it was inconsistent with this holding. *Nationwide, supra,* at 14.

*James, supra,* also places an additional limitation on such set-off provisions. The provision is valid only if it does not lead to a result wherein the insured receives a total amount of compensation which is less than the amount that he would have received if he had been injured by an uninsured motorist. *Id.* at paragraph two of the syllabus. It is permissible for an insured to receive different amounts of compensation from his insurer depending on whether he was injured by an insured or underinsured driver, provided the insured receives at least the policy limits in total compensation. *Kowalczyk v. State Auto. Mut. Ins. Co.* (1986), 34 Ohio App. 3d 157, 159. In this case, if Grange Mutual recovers as a set-off Dr. Hamoudi's entire payment, plaintiffs Hill still receive more

than they would have received had both drivers been uninsured.

Moreover, the contractual right of set-off is not subject to the particular rule of subrogation which prohibits an insurer from recovering payments made until its insured is fully compensated for his injuries. *James, supra,* at 389. Thus, it would appear that Grange Mutual has a greater right of recovery under the set-off provisions than under the right of subrogation.

There is a distinction between a right of set-off and a right of subrogation. The right of subrogation is in the nature of an assignment of a claim or right. Under subrogation, Grange Mutual succeeds to the rights of its insureds, the plaintiffs, against Dr. Hamoudi. Thus, if Grange Mutual has an enforceable subrogated right against Dr. Hamoudi, it has the right to intervene as a party-plaintiff in plaintiffs' suit against Dr. Hamoudi.

In contrast, the right of set-off invests Grange Mutual with no rights against Dr. Hamoudi. It is a right only between Grange Mutual and its insureds. Consequently, if Grange Mutual has an enforceable right of set-off against plaintiffs, it would have an action against plaintiffs for reimbursement, but would have no right to intervene in plaintiffs' suit against Dr. Hamoudi.

We have determined that Grange Mutual is entitled to both a right of subrogation and a right of set-off under the contract of insurance. The question remains whether the Grange Mutual policy and the applicable statute, R.C. 3937.18, permit the underinsured motorist carrier to set-off payments made by or on behalf of, or subrogate the insureds' claim against, a fully insured joint tortfeasor. This is an issue of first impression in this state and its resolution will require an examination of the relevant Policy terms, the applicable statute, and the underlying policy and purpose of uninsured and underinsured motorist coverage.

Plaintiffs and Dr. Hamoudi allege that Grange Mutual made its payment to plaintiffs only as to Ms. Birhanzl, since she was the only underinsured motorist involved in the accident. Plaintiffs and Dr. Hamoudi conclude that Grange Mutual may only subrogate recoveries from Ms. Birhanzl, not from Dr. Hamoudi. The fact that Grange Mutual made its payment only as to Ms. Birhanzl's liability is undisputed. Grange Mutual made no payment regarding Dr. Hamoudi's liability because he was fully in-

sured under the terms of the policy. This fact does not, however, resolve the central issue.

The subrogee stands in the shoes of the subrogor. Under the common law right of subrogation, an insurance company with a subrogated claim had a right against all those who were liable to the insured for the injury or damages which formed the basis of the insurance company's payment. Plaintiffs, however, emphasize the fundamental differences between standard property insurance and uninsured motorist coverage. While a policy of property insurance compensates the insured for damage to the insured's property from a variety of sources, a UM policy is substantially more limited. Under the Grange Mutual policy of insurance, the company is obligated "[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle ***."[2]

Since Grange Mutual is only obligated to pay those amounts which the underinsured motorist would be legally obligated to pay, plaintiffs maintain that Grange Mutual is entitled to set-off or subrogate only those amounts paid by an underinsured motorist. As Grange Mutual has released its subrogation rights against the underinsured motorist, Ms. Birhanzl, plaintiffs argue that Grange Mutual has no further right of set-off or subrogation.

The resolution of this issue is ultimately dependent on the provisions of R.C. 3937.18 and the contract of insurance. Grange Mutual's right to subrogation is based on R.C. 3937.18(E), which provides, in part:

"In the event of payment to any person under the COVERAGES required by this section and subject to the terms and conditions of such COVERAGES, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made ***."

As previously noted, the trust agreement in the Grange Mutual policy of insurance is virtually identical to the foregoing statutory provision. Grange Mutual's contractual rights are coextensive with the rights statutorily granted underinsured motorist carriers. Thus, in order to determine Grange Mutual's contractual rights of subrogation, the statute is determinative.

Upon initial examination, the provision appears sufficiently broad to encompass recoveries from both the underinsured motorist for whom payment was made and insured joint tortfeasors. The company is entitled to the proceeds of any judgment resulting from the exercise of any rights against any person legally responsible for the injury. Plaintiffs contend that the provision is more limited than it appears. They focus on the final phrase of the trust agreement, which reads, "because of which such payment is made." The equivalent statutory provision, "for which such payment is made," differs in form only, not in substance. Plaintiffs argue that this language entitles Grange Mutual to subrogate recoveries only from uninsured or underinsured tortfeasors for whom the UM carrier's payment was made.

Both statutory and contractual language is to be given its plain and ordinary meaning. *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St. 3d 120, 122; *King v. Nationwide Ins. Co.* (1988), 35 Ohio St. 3d 208, 211. Where the language is clear, plain and unambiguous, there is no need for construction and the court must simply enforce the language as written. Only where the language is ambiguous may the court engage in construction. A statutory or contractual provision is ambiguous if it is reasonably susceptible of more than one meaning. In such cases, the uninsured motorist statute is construed liberally in favor of the insured in order to effectuate its legislative purpose. *Curran v. State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38. Similarly, ambiguous provisions of a contract of insurance are construed strictly against the insurer and liberally in favor of the insured. *King, supra.*

Considering both the trust agreement and R.C. 3937.18(E), the court finds the language to be both clear and unambiguous. The clause upon which plaintiffs rely does not follow, nor does it modify "person or organization legally responsible." Instead, it follows "for the bodily injury or death." The clear and unambiguous meaning of the statute shows that the UM carrier has a subrogated right of recovery against any person legally responsible for the bodily injury, which is the subject of the insured's claim against the insurance company. Neither R.C. 3937.18(E) nor the trust agreement indicates any intent to limit the UM carrier's rights of subrogation to only uninsured and underinsured tortfeasors. Each of the terms, in fact, demonstrates a contrary intent. The stat-

ute refers to any settlement or judgment, any rights of recovery, and any person or organization legally responsible. These terms are not ambiguous.

Moreover, the Supreme Court has implicitly recognized in a recent case that R.C. 3937.18(E) entitles a UN carrier to subrogate the claims of its insured against fully insured joint tortfeasors. In *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St. 3d 159, the insured was a passenger in an auto driven by Resendez which was struck by a B&O train, killing Resendez and injuring the insured. The insured had in effect at the time of the accident an uninsured and underinsured motorist policy. Both Resendez and B&O were jointly and severally responsible for the insured's injuries. Under the insured's UM policy, Resendez was considered an underinsured motorist, but B&O was fully insured. Subsequently, the insured settled with B&O for $148,000 and with Resendez's insurance company for $50,000. Although the insured's UM carrier had not given its consent as required by the policy, the insured granted releases to both Resendez and B&O in return for the settlements. The insured then sought underinsured motorist compensation from her own insurance company.

The Supreme Court held that the insured was not entitled to recover under the underinsured motorist policy as she had unjustifiably interfered with the carrier's subrogation rights. Among the acts of interference cited by the court was the fact that the insured had released both B&O and the Resendez estate without the company's consent, thereby destroying the carrier's subrogation rights. The railroad was neither an uninsured nor underinsured organization for whom a payment was made by the UM carrier. It is axomatic that one cannot interfere with subrogation rights which do not exist. In the *Ruby* case, the Supreme Court implicitly recognized that an underinsured motorist carrier had a right of subrogation against fully insured joint tortfeasors.

Although the policy language in the *Ruby* case differed significantly from the Grange Mutual policy language, the case is still applicable to the facts of this case. In *Ruby*, the court cited R.C. 3937.18(E) as authority for the grant of subrogation rights rather than the policy language. The statutory section cited is also applicable in this case and the Grange Mutual policy term entitled "Trust Agreement" is taken virtually verbatim from that statute. As the *Ruby*

court impliedly granted subrogation in these circumstances based upon R.C. 3937.18(E), this court concludes that both the contract of insurance and the statute grant Grange Mutual a right of subrogation against fully insured joint tortfeasors, such as Dr. Hamoudi.

The applicable contractual and statutory provisions also provide that a UM carrier has a right to set-off payments made by fully insured joint tortfeasors from its limit of liability. Former R.C. 3937.18(A) (2) provides, in relevant part:

"*** The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance polices covering persons liable to the insured."

The contractual provision in the Grange Mutual policy of insurance implementing the foregoing statute is conclusive:

"B. Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by all sums paid on account of such bodily injury by or on behalf of:
"1. the owner or operator of the uninsured motor vehicle, and
"2. any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the Bodily Injury Liability Coverage of the policy."

Thus, we can only conclude that Grange Mutual's right of set-off is applicable to payments made by insured joint tortfeasors.

Further, the set-off provisions may be used to clarify the meaning of the subrogation provisions. *Nationwide, supra,* at 12. The rights of set-off and subrogation accomplish the same purposes, although through slightly different means. It would be illogical to permit the set-off of payments made by insured joint tortfeasors definitely permitted by the foregoing provisions while prohibiting subrogation under the same circumstances.

The determination in this case is consistent with the purpose and policy of uninsured motorist coverage. "Uninsured motorist coverage *** is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage would otherwise go uncompensated. ***" *Abate v.*

*Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, 165. In *Motorists Mutl. Ins. Co. v. Tomanski* (1971), 27 Ohio St. 2d 222, the court held that: "'[u]ninsured motorists' insurance is not liability insurance *** but resembles limited accident insurance. It ***insures him against losses occasioned *** by a limited group of tortfeasors. ***" *Id.* at 224, quoting *Hein v. Nationwide Mutl. Ins. Co.* (1965), 106 N.H. 378, 381; 213 A.2d 197. The court also stated that "'[i]t is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in the event of an accident.'" *Id.,* quoting *Horne v. Superior Life Ins. Co.* (1962), 203 Va. 282; 123 S.E.2d 401, 404.

The UM carrier does not provide insurance for any specific tortfeasor. The policy only insures that at least a given amount of compensation will be available to the policyholder regardless of whether an insured, underinsured, or uninsured motorist is at fault. The policy is, however, only applicable when an uninsured or underinsured motorist is involved in the accident.

The coverage provides basic protection to the insured in the event of an accident involving an uninsured or underinsured motorist. If this basic protection is available from some other source, the UM coverage does not come into effect. The set-off and subrogation provisions are intended to achieve this objective. When the insured has received an amount in total compensation equal to the policy's limit of liability, the UM carrier has no further obligation to the insured. When the carrier has previously made a payment to the insured, and the insured receives additional compensation from other sources, the carrier may recover those payments made to the insured provided that the insured never receives an amount of total compensation less than the limits of his uninsured motorist coverage. See *Kowalczyk, supra.*

Uninsured motorist policies are concerned only with their insured. The policies do not insure other drivers. They insure only that the policyholder will receive a minimum amount of total compensation regardless of the insurance coverage carried by the other driver. As the set-off provision clearly indicates, once the insured has received an amount in compensation from those liable for the accident equal to the limits of the uninsured motorist policy, the carrier's limit of liability is reduced to zero and the carrier need make no payment to the insured.

Grange Mutual's assignment of error is well-taken. Under the contract of insurance and R.C. 3937.18(E), Grange Mutual has a right to subrogate its insured's claims against joint tortfeasors who qualify neither as uninsured or underinsured motorists. Alternatively, regarding Grange Mutual's prayer for declaratory judgment, Grange Mutual has a right of set-off and reimbursement against its insureds for amounts they receive from Dr. Hamoudi.

Plaintiffs also cross-appeal from the trial court's summary judgment in favor of Grange Mutual on the bad faith cross-claim.

Plaintiffs assert the following cross-assignments of error:

"I. The trial court erred in granting summary judgment contrary to plaintiffs' evidence of bad faith.

"II. The trial court erred in holding there was no basis for plaintiffs' claim of bad faith."

The cross-assignments of error are interrelated, and are considered together.

The law imposes a duty of good faith on an insurer in the handling and payment of the claims of its insured. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, paragraph one of the syllabus. The breach of this duty gives rise to a cause of action in tort against the insurer. *Id.* The breach of the duty of good faith is equivalent to bad faith. *Slater v. Motorists Mutl. Ins. Co.* (1962), 174 Ohio St. 148, paragraph two of the syllabus. It is not simply bad judgment or negligence, but conscious wrongdoing or the breach of a known duty with a dishonest or ulterior motive. *Id.* Specifically, proof of actual intent on the part of the insurer to mislead or deceive the insured may support an action for bad faith. *Id.*

Plaintiffs' cross-claim alleges that Grange Mutual "breached its duty of good faith by wilfully and maliciously misleading [plaintiffs] with respect to the intention to exercise subrogation rights and with respect to the negotiation of the release and discharge agreement."

In its motion for summary judgment, Grange Mutual essentially denied that it made any false misrepresentations regarding its intent to exercise subrogation rights or the import of the release and discharge agreement. In support of its motion, Grange Mutual filed with the trial court the deposition of plaintiffs' attorney during the relevant time period. Discussed throughout the deposition and attached thereto, are twenty-five exhibits representing the correspondence between Grange Mutual and plaintiffs, through their attorney. Moreover, the parties stipulated to the authenticity of the release and discharge agreement and the Grange Mutual policy of insurance.

Several of these letters written during plaintiffs' negotiations with Grange Mutual demonstrate that Grange Mutual never misrepresented its intention to exercise its rights of subrogation against Dr. Hamoudi. Further, one of plaintiffs' letters to Grange Mutual clearly indicates that they understood Grange Mutual would not release its right of subrogation against Dr. Hamoudi. Finally, the release and discharge agreement specifically releases Ms. Birhanzl while making no mention of Dr. Hamoudi, even though the parties had dealt separately with the two defendants in earlier communications.

"Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. ***" *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 2. A successful motion for summary judgment rests on a tripartite showing:

"(1) that there is no genuine issue as to any material fact;

"(2) that the moving party is entitled to judgment as a matter of law; and

"(3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. ***" *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66. Summary judgment "*** must be awarded with caution, resolving doubts and construing the evidence against the moving party. ***" *Norris, supra.*

In this case, Grange Mutual has offered evidence of the negotiations between the parties which demonstrate that it made no representations that it would not assert its subrogation rights against Dr. Hamoudi. If they are to avoid summary judgment, plaintiffs must, under Civ. R. 56(E), present evidence showing that a genuine issue of fact exists. Plaintiffs offered the affidavit of their attorney. He stated that, "during negotiations, Mr. Cahill made clear to me that Grange was not going to seek subrogation against Dr. Hamoudi." He further stated that Grange Mutual never informed him that it intended to assert its subrogation rights until it filed its motion to intervene.

Civ. R. 56(E) requires the non-moving party to respond with specific facts showing there is a genuine issue for trial. *Van Fossen v. Babcock*

& *Wilcox Co.* (1988), 36 Ohio St. 3d 100, 117. An affidavit which does not present specific facts does not create a genuine issue of material fact. *Duffey v. Broad East Co.* (Apr. 17, 1990), Franklin App. No. 89AP-133, unreported (1990 Opinions 1449). Moreover, plaintiffs have not cited, nor is this court able to find, any authority placing a duty on an insurer to affirmatively reserve its right to subrogation when that right is plainly spelled out in the policy language.

There is no genuine issue of material fact as to any representations made by Grange Mutual. Moreover, plaintiffs have failed to respond with specific facts raising a genuine issue for trial as required by Civ. R. 56(E). Reasonable minds can only conclude from the evidence that Grange Mutual did not misrepresent its intention to exercise its rights of subrogation against Dr. Hamoudi. Thus, the trial court was correct in finding that Grange Mutual was entitled to judgment as a matter of law.

Plaintiffs' cross-assignment of error is not well-taken.

Therefore, plaintiffs' cross-assignment of error is overruled. Grange Mutual's assignment of error is sustained. The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed and*
*cause remanded.*

STRAUSBAUGH and WINKLER, J.J., concur.

WINKLER, J., of the Hamilton County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] The *Auto-Owners* case was later overruled in *Dues v. Hodge* (1988), 36 Ohio St. 3d 46. See, also, *Tomlinson v. Skolnik* (1989), 44 Ohio St. 3d 11. But, see, *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St. 3d 162, 164.

[2] An uninsured motor vehicle is defined in Grange Mutual's UM policy as including both uninsured and underinsured motor vehicles.