OPINION
{¶ 1} Plaintiff-appellant Administrator of the Estate of Cliff Adam Heaton appeals the July 7, 2005 Judgment Entry of the Licking County Court of Common Pleas granting, in part, defendant-appellee Grange Mutual Insurance Company's motion for summary judgment.
 STATEMENT OF FACTS AND CASE {¶ 2} This matter arises from a wrongful death action initiated by appellant against Phillip A. Carter, Susan L. Carter, Timothy L. Magers, Timothy D. Magers and Grange Mutual Casualty Company. The following facts were stipulated to, as reflected in the trial court's Judgment Entry, filed on July 7, 2005:
 {¶ 3} On May 13, 2002, the decedent, Cliff Adam Heaton, was a passenger in a car driven by Phillip Andrew Carter. It is undisputed Carter was negligent and his negligence was a proximate cause of the accident and the death of Cliff Heaton and Jennifer Pintz, both passengers in the Carter car. Carter admits he was speeding, failed to stop for a stop sign, and was passing the Magers' vehicle in an intersection when he lost control of his car, went off the road, and hit a tree.
 {¶ 4} On June 24, 2003, the trial court granted appellant default judgment against Phillip Andrew Carter and his mother, Susan Carter, finding appellant was legally entitled to recover from the defendants damages in an amount to be determined by the Court.
 {¶ 5} It was alleged, but disputed by, Timothy L. Magers and his father, Timothy D. Magers, that Timothy L. Magers, while driving his father's car, was engaged in negligent driving which directly caused or contributed to the crash of the Carter vehicle.
 {¶ 6} State Farm Insurance Company insured the Magers by an automobile liability insurance policy with liability limits of $100,000.00/$300,000.00. Timothy L. Magers, through his automobile liability insurance carrier, entered into a settlement agreement whereby State Farm Insurance Company agreed to pay appellant $100,000.00, its per person automobile liability insurance policy limit.
 {¶ 7} The parties have agreed and stipulated neither Phillip Andrew Carter nor the vehicle he was driving were insured by any automobile liability insurance policy at the time of the accident.
 {¶ 8} The trial court bifurcated appellant's bad faith claim against Grange Mutual Casualty Company on November 10, 2003.
 {¶ 9} The decedent, Cliff A. Heaton, age 19, lived in the home of his father, Thomas H. Heaton. At the time of the crash, Thomas H. Heaton was a named insured under an automobile liability insurance policy issued by Grange Mutual Casualty Company ("Grange") containing uninsured motorist coverage with policy limits of $100,000.00/$300,000.00.
 {¶ 10} Appellant and Grange stipulated Mr. Heaton first purchased an automobile liability policy from Grange on June 3, 1992. Every six months thereafter, in exchange for the payment of a premium by Thomas H. Heaton, Grange issued a new document for an additional six month "renewal" of the automobile liability insurance contract. It was further stipulated Thomas H. Heaton was continuously insured by a Grange automobile liability insurance policy from June 3, 1992, through June 3, 2002.
 {¶ 11} The parties have further agreed the damages resulting from the death of Cliff A. Heaton are in excess of $200,000.00.
 {¶ 12} Both appellant and Grange filed motions for summary judgment. On August 9, 2004, via Judgment Entry, the trial court granted, in part, and denied, in part, appellant's motion for summary judgment, and granted, in part, and denied, in part, Grange's motion for summary judgment. On July 7, 2005, the trial court, via Amended Entry, corrected the August 9, 2004 Judgment Entry, and again adopted the August 9, 2004 Judgment Entry as part of its order.
 {¶ 13} Appellant now appeals, assigning as error:
 {¶ 14} "I. THE TRIAL COURT ERRED IN ITS RULING THAT THE GRANGE UNINSURED MOTORIST POLICY ENTITLED GRANGE MUTUAL CASUALTY COMPANY TO A SETOFF OF THE FULL AMOUNT PAID TO PLAINTIFF-APPELLANT BY A JOINT TORTFEASOR'S AUTOMOBILE INSURANCE CARRIER."
 {¶ 15} We begin by noting summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36,506 N.E.2d 212.
 {¶ 16} Civ.R. 56(C) states, in pertinent part:
 {¶ 17} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 18} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresherv. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.
 {¶ 19} It is based upon this standard we review appellant's assignment of error.
 {¶ 20} As stated above, Grange first issued a policy of automobile liability insurance coverage to Thomas H. Heaton on June 3, 1992. Every six months thereafter Grange issued a "renewal" policy to Thomas H. Heaton in exchange for a premium paid by Mr. Heaton. Mr. Heaton was continuously insured by Grange from June 3, 1992, to June 3, 2002.
 {¶ 21} The Ohio Supreme Court, in Wolfe v. Wolfe2000-Ohio-322, 88 Ohio St.3d 246, held:
 {¶ 22} "[P]ursuant to R.C. 3937.31(A), every automobileliability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C.3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy."
 {¶ 23} In Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St. 3d 281, the Supreme Court went on to hold: ". . . the statutory law in effect on the date of issue of each new policy is the law to be applied."
 {¶ 24} Accordingly, upon review of the record, the Grange policy in effect on the date of the accident, May 13, 2002, was the policy issued with an effective date of June 3, 2000. Therefore, the version of R.C. 3937.18, effective November 2, 1999, applies in the case sub judice. The statute states, in pertinent part:
 {¶ 25} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
 {¶ 26} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 27} "For purposes of division (A)(1) of this section, an insured is legally entitled to recover damages if the insured is able to prove the elements of the insured's claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. The fact that the owner or operator of the uninsured motor vehicle has an immunity under Chapter 2744. of the Revised Code or a diplomatic immunity that could be raised as a defense in an action brought against the owner or operator by the insured does not affect the insured's right to recover under uninsured motorist coverage. However, any other type of statutory or common law immunity that may be a defense for the owner or operator of an uninsured motor vehicle shall also be a defense to an action brought by the insured to recover under uninsured motorist coverage.
 {¶ 28} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.Underinsured motorist coverage is not and shall not be excessinsurance to other applicable liability coverages, and shall beprovided only to afford the insured an amount of protection notgreater than that which would be available under the insured'suninsured motorist coverage if the person or persons liable wereuninsured at the time of the accident. The policy limits of theunderinsured motorist coverage shall be reduced by those amountsavailable for payment under all applicable bodily injuryliability bonds and insurance policies covering persons liable tothe insured."
 {¶ 29} * * *
 {¶ 30} "(H) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claimsresulting from or arising out of any one person's bodily injury,
including death, shall collectively be subject to the limit ofthe policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policylimit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident." (Emphasis added.)
 {¶ 31} Appellant argues the trial court erred in permitting Grange to set-off the $100,000 settlement with the Magers against the uninsured motorist coverage afforded under appellant's automobile liability policy with Grange. Specifically, appellant asserts the trial court failed to consider each of the two joint tortfeasors separately for purposes of determining coverage, pursuant to Motorists Mut. Ins. Co. v. Tomanski (1971),27 Ohio St.2d 222. Appellant notes the purpose and public policy underlying mandatory uninsured motorist coverage was "to assure that an injured person receive at least the same amount of compensation whether the tortfeasor is insured or uninsured." Accordingly, appellant asserts the setoff language in the Grange policy is contrary to the purpose and public policy of the statute.
 {¶ 32} As stated in the statement of facts, supra, the accident sub judice involved joint tortfeasors, one uninsured and one underinsured. In Tomanski, supra, the plaintiff brought a claim against two tortfeasors, one of whom was insured, and one of whom was uninsured. The issue was whether the insured's contractual right to receive uninsured coverage was eliminated by the presence of a second vehicle involved in the accident, which was insured. The court concluded that the presence of an insured motor vehicle in the accident did not abrogate the right of the insured to receive uninsured motorists coverage based on the involvement of the uninsured driver in the accident. Id. at syllabus.
 {¶ 33} The Twelfth District Court of Appeals discussed the issue presented herein, in Roberts v. Allstate Insurance Co.
(2001), stating:
 {¶ 34} "Appellants also rely on the Ohio Supreme Court's decision in Motorists Mutual Ins. Co. v. Tomanski (1971),27 Ohio St.2d 222, in support of their contention.
 {¶ 35} * * *
 {¶ 36} "While we find that Tomanski offers guidance in our analysis, we do not find that it is dispositive of the issue as appellants suggest. Tomanski does not state that appellants may recover up to the policy limit under separate claims as to each tortfeasor. Instead, it stands for the proposition that the presence of one insured and one uninsured motorist, when both are negligent, will not defeat a plaintiff's contractual right to seek benefits for the negligence of the uninsured motorist. Id.
Accordingly, the resolution of appellants' first assignment of error lies in an examination of the Allstate policy to determine what contractual right appellants have to recover uninsured motorist benefits under the policy provisions."
 {¶ 37} Upon review, we agree with appellant the Grange policy contractually entitles appellant to uninsured coverage despite the existence of an insured joint tortfeasor, because liability of joint tortfeastors is both joint and severable. However, at issue is whether said coverage may be excluded by the terms of the Grange policy, which purports to entitle Grange to set-off the $100,000 settlement paid pursuant to the Magers' liability insurance. Having found appellant contractually entitled to recover uninsured motorist coverage under the Grange policy despite the presence of an additional insured tortfeasor, we must then analyze the policy language governing said coverage.
 {¶ 38} As stated above, R.C. 3937.18 (H) permits automobile liability policies of insurance to include terms and conditions to the effect all claims resulting from or arising out of any one person's bodily injury may be collectively subject to the limit of the policy applicable to bodily injury, and for the purpose of such policy may constitute a single claim.
 {¶ 39} The Uninsured Motorists Coverage section of the policy at issue provides:
 {¶ 40} "A. The limit of liability shown in the declarations under Uninsured Motorists Coverage for "each person" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury
sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of Bodily Injury Liability shown in the declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by two or more persons resulting from any one accident. This is the most we will pay regardless of the number of:
 {¶ 41} "1. Insureds;
 {¶ 42} "2. Claims made;
 {¶ 43} "3. Vehicles or premiums shown in the declarations; or
 {¶ 44} "4. Vehicles involved in the accident." "(Emphasis added)."
 {¶ 45} The declarations page of the policy lists uninsured motorist bodily injury coverage limits as $100,000 "each person", $300,000 per accident.
 {¶ 46} Upon review, the policy language set forth above refers only to the Grange policy. The language provides its maximum limit of liability for all claims arising from bodily injury to one person is $100,000. While the Grange provision complies with the language of subsection (H), we do not find this policy language dispositive of the issue before us. The issue sub judice does not involve "per person" versus "per accident" policy limits; rather, the issue involves set-off against unisured motorist coverage required under the statute and afforded under the policy.
 {¶ 47} R.C. 3937.18(A)(2) governs underinsured motoristcoverage, and provides, in part, as noted supra:
 {¶ 48} "Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)
 {¶ 49} Subsection (A)(1) relating to uninsured motoristcoverage does not contain a similar provision permitting set-off against uninsured coverage arising under the policy. However, the Grange policy contains the following provision:
 {¶ 50} "B. The limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A."
 {¶ 51} Appellant notes the set-off language for underinsured coverage set forth in R.C. 3937.18 (A)(2) is not found in R.C.3937.18 (A)(1) relating to uninsured coverage. Therefore, appellant argues to apply Grange's set-off language to appellant's uninsured claim is contrary to the purpose and public policy of R.C. 3937.18(A) (1), and the trial court failed to treat the joint tortfeasors separately. We disagree. Although the tortfeasors at issue have both joint and severable liability, to include the set-off language in section (A)(1) would be superfluous due to the nature and purpose of uninsured motorist coverage, as there is no coverage to set-off. The purpose of Section (A)(2) is to afford the insured protection not greater than that which would be available under the insured's uninsured coverage if the person or persons liable were uninsured. To allow appellant to recover $100,000 from Magers' carrier and $100,000 from Grange would result in appellant receiving protection greater than appellant would have available under appellant's own uninsured coverage ($100,000) had either or both joint tortfeasor's been uninsured. Therefore, we find the parties were free to contractually set-off the uninsured coverage by amounts received by or on behalf of persons or organizations legally responsible (Magers), and Grange's set-off provision noted supra does not violate public policy.
 {¶ 52} We distinguish the case sub judice from this Court's opinion in Ross v. State Automobile Mutual Insurance Co.
(February 26, 2001), Licking App. No. 00CA69, wherein we construed the policy language against the insurance carrier, finding the policy did not limit the coverage available to a single claim, despite the existence of two underinsured tortfeasors.
 {¶ 53} In Ross, the policy stated:
 {¶ 54} "The following provision applies if the Declarations indicates split limits:
 {¶ 55} "The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. Except in wrongful death, when "bodily injury" to any one person gives rise to two or more separate and distinct causes of action, the limit of liability stated with respect to each person shall be inclusive of all such causes of action. This is the most we will pay regardless of the number of:
 {¶ 56} "1. "Insureds";
 {¶ 57} "2. Claims made;
 {¶ 58} "3. Vehicles or premiums shown in the Declarations; or
 {¶ 59} "4. Vehicles involved in the accident."
 {¶ 60} This Court noted:
 {¶ 61} "We agree with appellees that this case does not involve stacking, which occurs where the limits of uninsured/underinsured coverage, afforded by multiple separate policies, are aggregated together to provide a larger source of compensation to the insured for the damages sustained as the result of negligence. Appellees are not attempting to aggregate coverage afforded to appellees by more than one policy. Rather, the appellees are attempting to apply the uninsured/underinsured coverage available under a single policy separately as to each of two joint tortfeasors.
 {¶ 62} * * *
 {¶ 63} "The trial court did not err in concluding that the policy does not limit the coverage available to a single claim, despite the existence of two underinsured tortfeasors. As noted by the court, if the policy language ended with the sentence providing that the limit of liability for each accident is the maximum for all damages for bodily injury resulting from any one accident, the available limits would be the per accident amount regardless of the number of tortfeasors. However, the policy goes on to provide limitations, excepting wrongful death claims from such limitations."
 {¶ 64} Unlike Ross, we find the issue herein does involve stacking of two separate liability policies; not just split limits.
 {¶ 65} In summary, we do not find the Grange policy violates the purpose and public policy of O.R.C. 3937.18. To the contrary, we find permitting set-off fulfills the purpose of the statute in assuring an injured party receives the same amount of compensation regardless of whether a tortfeasor/tortfeasors is/are underinsured and/or uninsured. We find the policy allows set-off of the $100,000 underinsured motorist coverage paid on behalf of the Magers, and the trial court did not err in so holding.
 {¶ 66} The July 7, 2005 Judgment Entry of the Licking County Court of Common Pleas is affirmed.
By: Hoffman, P.J. Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.