[Cite as *Haney v. Nationwide Mut. Ins. Co.*, 2010-Ohio-3149.]
STATE OF OHIO, HARRISON COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| DONNA JEAN HANEY, Administrator of the Estate of Edith Ager, etc | ) ) ) | CASE NO. 09 HA 6 |
| PLAINTIFFS-APPELLEES | ) ) | |
| VS. | ) ) | OPINION |
| NATIONWIDE INSURANCE COMPANY | ) ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
                              Pleas of Harrison County, Ohio
                              Case No. CVH-2002-0776

JUDGMENT:                     Reversed.
                              Prejudgment Interest Award Vacated.

APPEARANCES:
For Plaintiffs-Appellees:     Atty. Frank J. Bruzzese
                              300 Sinclair Building
                              P.O. Box 1506
                              Steubenville, Ohio  43952

                              Atty. Thomas Mark Beetham
                              146 South Main Street
                              Cadiz, Ohio  43907

For Defendant-Appellant:      Atty. Ralph F. Dublikar
                              Atty. James F. Mathews
                              Baker, Dublikar, Beck, Wiley & Mathews
                              400 South Main Street
                              North Canton, Ohio  44720

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                              Dated:  June 21, 2010

WAITE, J.

{¶1} Appellant, Nationwide Mutual Insurance Company, appeals the decision of the Harrison County Court of Common Pleas to enter summary judgment against it and in favor of Appellee, Donna Jean Haney, Administrator of the Estate of Edith Ager, and to award prejudgment interest to the estate in this declaration of coverage action. For the following reasons, the judgment of the trial court is reversed, and the prejudgment interest award is vacated.

{¶2} Mrs. Ager was killed in a motor vehicle accident on September 28, 2001. She was travelling northbound on State Route 9 in Harrison County, Ohio, when a red vehicle operated by an unidentified driver travelling southbound was in the process of passing a southbound pickup truck being driven by Jerry L. Anderson. As the red vehicle cut back into the southbound lane in front of Anderson, Anderson lost control of his truck, travelled left of center, and collided head-on with Ager.

{¶3} The parties stipulate that, on or about October 30, 2002, the sum of $50,000 was paid to the estate by Grange Mutual Insurance Company, Anderson's insurer, "in connection with [the estate's] release of all claims of liability against [Anderson], [his wife], and [Grange]." (Stip. at ¶10.) At the time of the accident, Ager was covered by a Nationwide automobile policy, Policy No. 92 34 N 125126 ("Ager policy"), issued on August 31, 2001, that included uninsured/underinsured motorist coverage with limits of $100,000 each person and $300,000 each occurrence. Nationwide subsequently paid the sum of $50,000 to the estate.

**{¶4}** The estate sought a declaration that Appellant owed the estate an additional $50,000 pursuant to the uninsured/underinsured motorist coverage provision in Ager's policy. In its motion for summary judgment, the estate reasoned that the red vehicle that forced Anderson off of the road was an "uninsured vehicle" as that term is defined by Ager's policy, and, that the estate should recover pursuant to the policy limits of the uninsured/underinsured motorist coverage provision.

**{¶5}** The Ager policy reads, in pertinent part:

**{¶6}** "An **uninsured motor vehicle** is:

**{¶7}** "* * *

**{¶8}** "d) a 'hit-and-run' **motor vehicle** which causes **bodily injury** to an **insured**.

**{¶9}** "The driver and the owner of the 'hit-and-run' vehicle must be unknown * * *

**{¶10}** "Physical contact with the 'hit-and-run' vehicle is required unless the facts of the accident are proven by independent corroborative evidence. Independent corroborative evidence does not include the testimony of any **insured** seeking recovery from **us**, unless that testimony is supported by additional evidence." (Ager policy, Form V-2352A, p. 2.)

**{¶11}** Appellant does not dispute the fact that the red vehicle was an "uninsured motor vehicle" as that term is defined by the Ager policy, but argues instead that a setoff of the proceeds of the Grange settlement was mandated by R.C. 3937.18(A)(2).

{¶12} In *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, the Supreme Court held that, "the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at syllabus. The Ager policy in effect on the date of the accident, September 28, 2001, was issued on August 31, 2001. Therefore, the version of R.C. 3937.18, effective September 21, 2000, applies in the case sub judice. The statute reads, in pertinent part:

{¶13} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:

{¶14} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.

{¶15} "* * *

{¶16} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.  Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident.  The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

{¶17} In its motion for summary judgment, the estate relied on the argument that under the facts of this case, Anderson was not negligent pursuant to the doctrine of sudden emergency, and, therefore, was not a "person[ ] liable to the insured."  The trial court disagreed, specifically concluding that the $50,000 payment made by Grange "was received to resolve a claim of liability against the Andersons."  (1/7/09 J.E., p. 5.)

{¶18} However, the trial court ultimately granted a declaratory judgment in favor of the estate.  The trial court reasoned that Ager was killed by the negligence of

a driver of an uninsured motor vehicle, as that term was defined by her policy, and, "[n]either Ohio Revised Code Section 3937.18(A)(1), nor [the Ager policy] contain any provision similar to the specific 'amounts available for payment' language considered [in R.C. 3937.18(A)(2).]" (1/7/09 J.E., p. 6.) As a consequence, the trial court concluded that '[w]hile it may make sense that there be a limitation on the uninsured motorist coverage where an additional tortfeasor has insurance coverage, no restriction has been identified by [Nationwide]." (1/7/09 J.E., p. 6.) In a separate judgment entry, the trial court awarded prejudgment interest to the estate. This timely appeal followed.

{¶19} In making its decision here, the trial court had before it the stipulations of the parties, the Ager policy, and the release and settlement executed between the estate and Grange on behalf of the Andersons. Also before the trial court were the depositions of Gregory Mamula, an Ohio State Patrolman, Richard Milleson and Mary Jane McCaslin, both of the Milleson Insurance Agency, and Kenneth Ager, Ager's husband. Mr. Ager was a plaintiff in the trial court action, as well as the original administrator of the estate. Mr. Ager, in his personal capacity, sought a declaration of coverage under his own Nationwide policy. However, the trial court's decision with respect to Mr. Ager's policy was not appealed.

{¶20} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a

light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶10. Only the substantive law applicable to a case will identify what constitutes a material issue, and only the disagreements "over facts that might affect the outcome of the suit under the governing law" will prevent summary judgment. Id. at ¶12, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

**{¶21}** When moving for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis omitted.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

Assignment of Error No. 1:

**{¶22}** "THE TRIAL COURT ERRED IN GRANTING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT AND IN DENYING THE APPELLANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, DECLARING THAT THE

APPELLEES WERE ENTITLED TO ADDITIONAL LIMITS OF UNDERINSURED MOTORISTS COVERAGE, TO THE APPELLANT'S PREJUDICE."

{¶23} Appellant challenges the trial court's decision as being directly in conflict with *Heaton v. Carter,* 5th Dist. No. 05-CA-76, 2006-Ohio-633, and *Roberts v. Allstate Insurance Co.* (Dec. 17, 2001), 10th Dist. No. CA2001-06-133. Appellant did not cite *Heaton* or *Roberts* in its briefs before the trial court.

{¶24} Instead, Appellant relied on *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, which addressed the interplay between underinsured policy limits and anti-stacking provisions in insurance contracts. The trial court recognized that *Littrell*, which addressed only the issue of underinsured motor vehicles, was inapplicable. Instead, the Court relied on statutory language and the Agers' policy language to conclude that neither appeared to limit recovery of the policy limits in the uninsured motorist coverage provision. It is interesting to note that the reduction language relied on by the *Heaton* Court also appears in the uninsured motorist coverage provision of the Ager policy. Again, *Heaton* was not relied on by Appellant in the trial court.

{¶25} Both *Heaton* and *Roberts* involve the interpretation of provisions limiting uninsured motorist coverage where the automobile accident at issue involved two tortfeasors, one underinsured and one uninsured. In *Heaton*, like the case sub judice, the insurance company of the underinsured motorist, Mager, provided the full amount of the automobile liability insurance policy proceeds in exchange for a settlement and release of any claims against Mager, despite the fact that Mager's

negligence was alleged but disputed. After considering the anti-stacking statute and the corresponding provision in the policy, the Fifth District Court of Appeals concluded that neither was dispositive of the issue before the Court.

**{¶26}** Instead, the *Heaton* Court held that the absence of a setoff provision in R.C. 3937.18(A)(1) did not prohibit setoff, because such a provision "would be superfluous due to the nature and purpose of uninsured motorist coverage, as there is no coverage to set-off." Id. at ¶51. The Fifth District looked to the specific language of the policy, which read, in pertinent part, "[t]he limit of liability shall be reduced by all sums paid because of **bodily injury** by or on behalf of persons or organizations who may be legally responsible." (Emphasis in original.) Id. at ¶50.

**{¶27}** The *Heaton* Court relied on this language to conclude that setoff was a contractually agreed upon provision in the insurance contract. The Court further stated that its conclusion was consistent with the purpose of subsection (A)(2) of the statute, which is to afford an insured protection, but not in an amount greater than that which would be available under the insured's uninsured coverage if the person or persons liable were uninsured. Id. at ¶51.

**{¶28}** The *Heaton* Court cited with favor the First District Court of Appeals decision in *Nationwide Mut. Ins. Co. v. Baker* (1993), 99 Ohio App.3d 433, 651 N.E.2d 1. In that case, the First District interpreted reduction language in a Nationwide insurance contract, which read, in its entirety, "[t]he limits of this coverage and/or any amounts payable under this coverage will be reduced by any amount paid by or for any liable parties." Id. at 434.

**{¶29}** The estate in *Baker* argued that the uninsured motorist statute did not allow for setoff, and, as a consequence, Nationwide should not be permitted to setoff the amount of a settlement entered into by the estate with a joint tortfeasor. Nationwide argued that if the reduction language in the policy allowing setoff from uninsured motorist limits is clearly stated, and the application of the provision does not result in the insured receiving less compensation than he or she would have received if injured solely by an uninsured motorist, the insurer is entitled to the setoff. In support of this position Nationwide relied on the Ohio Supreme Court's holdings of *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 481 N.E.2d 272, and *In re Nationwide Ins. Co.* (1989), 45 Ohio St.3d 11, 543 N.E.2d 89.

**{¶30}** In *James*, the insured relied on R.C. 3937.181(C), a predecessor statute now essentially subsumed in present R.C. 3937.18, and argued that the insurer should not be allowed a setoff from the underinsured limits of its policy because the insured had not been fully compensated for his injuries. The Ohio Supreme Court agreed with the insured that R.C. 3937.181(C) created a right of subrogation in the insurer and held, in the first paragraph of the syllabus of that case, that the insurer could not seek a setoff from the limits of its coverage until the insured had been fully compensated.

**{¶31}** However, the Court ultimately concluded that the policy endorsement, which allowed a setoff from limits for all sums paid by any person or entity legally responsible for the injury, was not subject to the, "particular rule of subrogation that prohibits setoff prior to full compensation of the insured," and that the endorsement

language of the policy rather than the statute was dispositive of the issue of the right of setoff. Id. at 389.

**{¶32}** The second paragraph of the *James* syllabus holds that an insurer may properly provide for setoff of payments against its underinsured limits so long as the policy language is clearly set forth in the underinsured motorist coverage section and does not lead to a result where the insured would receive less than if injured by an uninsured motorist. The estate in *Baker* urged the First District to continue to limit *James* to underinsured motorist coverage because of the difference in statutory setoff provisions. However, the *Baker* Court recognized that this argument ignores the apparent policy decision in the holding in *James* that clearly states that it is the specific insurance policy language (including endorsements) that controls.

**{¶33}** *James* was expressly followed in *In re Nationwide*, supra. The syllabus of *In re Nationwide* states that, "[a] setoff against the limits of underinsured and uninsured motorist coverage is permitted under R.C. 3937.18(E) provided the setoff is clearly set forth in the provisions of the insurance policy." The setoff language relied on in *In re Nationwide* was identical to the setoff language in *Baker*. Further, in a footnote, the Ohio Supreme Court wrote that the status of the tortfeasor at the time the payment was made was irrelevant to the setoff issue in the case. *In re Nationwide* at 12, fn. 2.

**{¶34}** Although not expressly overruled by *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, the Supreme Court recognized that *Savoie* called into question the continuing viability of its holding in *In re Nationwide*.

See *Cole v. Holland* (1996), 76 Ohio St.3d 220, 223, 667 N.E.2d 353 ("Although *Savoie* did not overrule *James* and *In re Nationwide*, and moreover did not specifically find any provision of former R.C. 3937.18 to be ambiguous or unconstitutional relative to setoffs, courts of this state (including the trial court and the court of appeals in the case sub judice) have been relying on paragraph three of the syllabus of *Savoie*, as well as on the discussion in Part III of that opinion, and on their own independent reasoning, to decide that insurers must set off proceeds received by their insureds from tortfeasors' liability insurers against the insureds' damages, rather than against the policy limit.") *Savoie* was, in effect, overruled by Am.Sub.S.B. No. 20, effective October 20, 1994, which amended R.C. 3937.18.

{¶35} Turning to the matter before us, the policy language is remarkably similar to that found in *Heaton*. The "Limits of Payment" section of the uninsured motorist provision of Ager's policy reads, in pertinent part:

{¶36} "3. The limits of this coverage will be reduced by any amount paid by or for any liable parties.

{¶37} "4. Damages payable, if less than the limits of this coverage, will be reduced by any amount paid by or for any liable parties." (Ager policy, Form V-2352A, p. 4.)

{¶38} As in *Heaton*, Anderson was alleged to be negligent, but negligence was not proven. His insurer provided $50,000 in settlement, however, to resolve any and every claim by the estate that he may be liable. Hence, this payment falls squarely within the language of the Agers' policy requiring a reduction of the limits of

coverage found in the Agers' uninsured motorist policy by this amount. This reduction language is clear and unambiguous.

**{¶39}** Like the First District in *Baker,* in so holding we find that, "so long as the policy language is clearly stated and the setoff provision does not lead to any inconsistent or unfair result, any payment made, whether by an uninsured tortfeasor, an underinsured tortfeasor, or one or more joint tortfeasors, may be set off." Id. at 436; see also *Masenheimer v. Disselkamp*, 12th Dist. No. CA2002-08-200, 2003-Ohio-814, ¶20; *Roberts*, supra, at *3. Here, as in *Baker,* the reduction or setoff accomplishes the public policy behind the underinsured motorist statute, that is, that the estate does not receive less compensation than it would have received if Ager had died solely as a result of a collision with an uninsured motor vehicle.

**{¶40}** Accordingly, Appellant's first assignment of error is sustained, and the judgment of the trial court is reversed. Moreover, based on our decision to reverse summary judgment in this matter and grant judgment to Appellant, the prejudgment interest award is vacated. Because we have ruled favorably on Appellant's first assignment of error, its second assignment is now moot.

Donofrio, J., concurs.

DeGenaro, J., concurs.